

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STANLEY SHEPHERD, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | 3:05-CV-1442-D |
| | § | |
| DALLAS COUNTY, TEXAS | § | |
| Defendant. | § | |

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE
## TO DEFENDANT DALLAS COUNTY'S MOTION TO DISMISS

TO THE HONORABLE JUDGE OF THE COURT:

COMES NOW the Defendant Dallas County ("the County"), pursuant to Local Rule of Practice 7.1(f), and submits its reply to Plaintiff's response to the County's motion to dismiss.

**I.**

Plaintiff asserts that he was not incarcerated at the time he filed this suit, on July 20, 2005, a matter eventually subject to proof. He asserts that the exhaustion requirement of 42 U.S.C. § 1999e, therefore, does not apply to him.

Undersigned counsel has read the authorities cited by the Plaintiff and understands the holdings of those authorities. She, however, respectfully disagrees with those authorities and would ask this Court and any subsequent Court that reviews this matter to conclude contrary to the authorities cited by the Plaintiff.

*Defendant's Reply to Plaintiff's Response to Defendant Dallas County's Motion to Dismiss - Page 1*

## II.

Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court. Porter v. Nussle, 534 U.S. 516, 523 (2002). Prisoner suits alleging constitutional deprivations while incarcerated once fell within this general rule. In 1980, however, Congress introduced an exhaustion prescription for suits initiated by state prisoners. See Civil Rights of Institutionalized Persons Act, 94 Stat. 352, as amended, 42 U.S.C. § 1997e (1994 ed.). In 1995, as part of the Prison Litigation Reform Act of 1995 ("PRLA"), 110 Stat. 1321-73, as amended, Congress invigorated that exhaustion prescription in the revised exhaustion provision of 42 U.S.C. § 1997e(a). By passage of the PLRA, Congress replaced the general rule of non-exhaustion with a general rule of exhaustion. Porter, 534 U.S. at 524-525.

42 U.S.C. § 1997e(a) directs:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In construing the applicability of this provision to this action, as this Court is now required to do, its terms must not be read in isolation, but in their proper context. Id. at 527. That context is first established by the caption of the PLRA: "Suits by prisoners." This unqualified heading does not support an argument that Congress meant to bisect the universe of prisoner suits. Id. Instead, it was meant to do no more than separate preincarceration claims from claims arising during incarceration. Porter, 534 U.S. at 529.

Of paramount importance to any exhaustion inquiry is congressional intent. Patsy v. Board of Regents of Florida, 457 U.S. 496, 501 (1982). Where Congress specifically mandates, exhaustion is required. Coit Independence Joint Venture v. FSLIC, 489 U.S. 561, 579 (1989); Patsy, 457 U.S. at

*Defendant's Reply to Plaintiff's Response to Defendant Dallas County's Motion to Dismiss - Page 2*

502, n. 4. Appropriate deference to Congress' power to prescribe the basic procedural scheme under which a claim may be heard in a federal court requires fashioning of exhaustion principles in a manner consistent with congressional intent and any applicable statutory scheme. Patsy, 457 U.S. at 501-502 and n. 4.

Beyond doubt, Congress enacted Section 1997e(a) to reduce the quantity of and improve the quality of prisoner suits. Porter, 534 U.S. at 524. The purposes behind this "invigorated" approach to exhaustion were several. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. Since the internal problems of state prisons involve issues so peculiarly within state authority and expertise, the states have an important interest in not being bypassed in the correction of those problems. Id. at 531. In other instances, the internal review might "filter out some frivolous claims." And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy. Id. at 524-525.

### III.

By its terms, Section 1997e does not expressly state that a prisoner's status under this provision is governed by the date that he has chosen to file suit, as courts have construed. Such a reading of this provision is inconsistent with the context of the PLRA and Congressional intent. This interpretation of when Section 1997e is applicable, and when it is not, is inconsistent with the overall scheme of the PLRA.

It is the County's position that characterization of a plaintiff as a prisoner subject to Section 1997e should be based on that individual's status at the time his complaint arose. The caption of the PLRA makes it clear that the focus is on the type of suit filed, not the status of the individual. For

*Defendant's Reply to Plaintiff's Response to Defendant Dallas County's Motion to Dismiss - Page 3*

example, the focus is on the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison. See 18 U.S.C. § 3636(g)(2), enacted as part of the PLRA. Put another way, the focus of the PLRA is the genesis of the suit, that is, claims that arose during the time of incarceration, at the time the individual was so incarcerated.

The interpretation the Plaintiff asks this Court to apply results in a "bisection of the universe of prisoner suits," a view rejected by the Supreme Court. Porter, 534 U.S. at 527. For example, under Plaintiff's interpretation, the exhaustion principle <u>would</u> apply to the individual who remains in the facility where the suit had its genesis. It <u>would not</u> apply to the individual who waits until he is no longer confined to bring suit. This last category of individual would escape the requirement for exhaustion while his "peers" would not. Likewise, accepting Plaintiff's interpretation, an individual in the last category would also escape the limits placed on recovery of attorneys' fees under Section 1997e(d) and the restrictions on suit set forth in Section 1997e(c).

Plaintiff's interpretation runs contrary to the purposes behind the "invigorated" exhaustion requirement. If an individual waits to bring suit until such time as he is not confined in any facility, there will be no possibility for improvement of prison administration and there will be no opportunity for the states to filter out frivolous claims and there will be no opportunity for an administrative record that clarifies the contours of the controversy. Instead, Plaintiff's interpretation bypasses the states and their important interest in correction of problems peculiarly within their authority and expertise.

To read the exhaustion requirement of Section 1997e in context and not in isolation, the courts should look no further than individual's status at the time his complaint arose and, more importantly, it should focus on the nature of the suit, that is, whether it is a suit that arises out, and

*Defendant's Reply to Plaintiff's Response to Defendant Dallas County's Motion to Dismiss - Page 4*

concerns matters that have their origin during, the incarceration of an individual. Any other interpretation of Section 1997e undermines the Congressional intent and purposes behind its 1995 invigoration of the exhaustion principles and does so inexplicably and without principle. There ought to be no escape from what otherwise is mandatory, id. at 524, by allowing an individual's status at the time of suit define whether his suit filed is in fact a "suit by a prisoner," to which Section 1997e applies.

## IV.

The County thus asks this Court to apply the exhaustion requirement of Section 1997e(a) to the Plaintiff in this action because at the time his complaint in this suit arose he was a prisoner and his suit is a suit concerning "prison conditions"[1] and has its genesis in his status as his then-status as a prisoner.[2]

---

[1] 18 U.S.C. § 3626(g)(2)

[2] That Plaintiff was not in the custody of the Dallas County Jail when he filed this suit is no different from the individual who is also no longer in custody of the Dallas County Jail but who is confined in the Texas Department of Criminal Justice. The exhaustion requirement should apply to both, not just the latter individual. The purposes of Section 1997e are fulfilled even if neither individual remains confined in the Dallas County Jail.

*Defendant's Reply to Plaintiff's Response to Defendant Dallas County's Motion to Dismiss - Page 5*

Respectfully submitted,

BILL HILL
DISTRICT ATTORNEY

*DolenaT. Westergard*
DOLENA T. WESTERGARD
ASSISTANT DISTRICT ATTORNEY
TEXAS BAR NO. 21219800
FEDERAL SECTION
FRANK CROWLEY COURTS BUILDING
133 N. INDUSTRIAL BLVD., LB 19
DALLAS, TEXAS 75207-4399
(214) 653-3692
(214) 653-2899 (FAX)

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Reply was mailed, in accordance with Fed. R. Civ. P. 5, to Robert L. Chaiken, Chaiken & Chaiken, P.C., One Galleria Tower, 13355 Noel Road, Ste. 600, Dallas, Texas 75240 on this 27th day of March, 2006.

*DolenaT. Westergard*
DOLENA T. WESTERGARD

*Defendant's Reply to Plaintiff's Response to Defendant Dallas County's Motion to Dismiss - Page 6*