IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STANLEY SHEPHERD,<br>      Plaintiff, | §<br>§<br>§ | |
| VS. | §<br>§<br>§ | CIVIL ACTION NO.<br>3:05-CV-1442-D |
| DALLAS COUNTY, TEXAS<br>      Defendant. | §<br>§ | |

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CRAIG WATKINS
DISTRICT ATTORNEY

DOLENA T. WESTERGARD
ASSISTANT DISTRICT ATTORNEY
TEXAS BAR NO. 21219800
FEDERAL SECTION
133 N. INDUSTRIAL BLVD., LB 19
DALLAS, TEXAS 75207-4399
(214) 653-3692
(214) 653-2899 (FAX)

ATTORNEYS FOR DEFENDANT

## TABLE OF AUTHORITIES

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)...............................................................................7

City of Canton v. Harris,
    489 U.S. 378 (1989)..............................................................................15

Colle v. Brazos County, Tex.,
    981 F.2d 237 (5th Cir. 1993)................................................................18

Conner v. Travis County,
    209 F.3d 794 (5th Cir. 2000)..................................................................9

Cozzo v. Tangipahoa Parish Council,
    279 F.3d 273 (5th Cir. 2003)................................................................15

Davis v. City of N. Richland Hills,
    406 F.3d 375 (5th Cir. 2005)................................................................15

Domino v. Texas Dept. of Crim. Justice,
    239 F.3d 752 (5th Cir. 2001)................................................................11

Farmer v. Brennan,
    511 U.S. 825 (1994)...............................................................................8

Flores v. County of Hardeman, TX,
    124 F.3d 736 (5th Cir. 1997)..............................................................4,8

Gibbs v. Grimmette,
    254 F.3d 545 (5th Cir. 2001)..................................................................5

Gonzalez v. Ysleta Independent School District,
    996 F.2d 745 (5th Cir. 1993)..................................................................8

Hare v. City of Corinth,
    74 F.3d 633 (5th Cir. 1996)..........................................................passim

Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,
    379 F.3d 293 (5th Cir. 2004)................................................................14

Johnson v. Treen,
    759 F.2 1236 (5th Cir. 1985)................................................................10

## TABLE OF AUTHORITIES (CONT'D)

Lawson v. Dallas County,
    No. 00-10078, 2002 U.S. App. LEXIS 6543 (5th Cir. 2002)....................................3

Lopez v. Houston Indep. School Dist.,
    817 F.2d 351 (5th Cir.1987)...................................................................13

Pineda v. City of Houston,
    291 F.3d 325 (5th Cir. 2002)..................................................................16

Roberts v. City of Shreveport,
    397 F.3d 287 (5th Cir. 2005)..................................................................16

Scott v. Moore,
    114 F.3d 51 (5th Cir. 1997)......................................................................4

Sibley v. Lemaire,
    184 F.3d 481 (5th Cir. 1999)....................................................................5

Snyder v. Trepagnier,
    142 F.3d 791 (5th Cir. 1998)................................................................9,17

Turner v. Baylor Richardson Med. Center,
    476 F.3d 337 (5th Cir. 2007)....................................................................9

U.S. v. Francisco Corpus, et al.,
    491 F.3d 205 (5th Cir. 2007).....................................................................7

Victoria v. Larpenter,
    369 F.3d 475 (5th Cir. 2004)...................................................................14

Walker v. Butler,
    967 F.2d 176 (5th Cir. 1992)...................................................................10

Walker v. Shansky,
    28 F.3d 666 (7th Cir. 1994).....................................................................9

Wilson v. Seiter,
    501 U.S. 294 (1991)...............................................................................6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **STANLEY SHEPHERD,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.** |
| | § | **3:05-CV-1442-D** |
| | § | |
| **DALLAS COUNTY, TEXAS** | § | |
| **Defendant.** | § | |

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF THE COURT:

COMES NOW Defendant Dallas County ("the County"), pursuant to Local Rule of Practice 7.1(f), and this Court's order of November 13, 2007, and submits its reply to Plaintiff's response to Defendant's motion for summary judgment.

### What is not the issue?

The County will not respond to all the myriad of criticisms lodged against it in the Plaintiff's response filed in this action.  Suffice it to say that the Plaintiff has thrown the proverbial "kitchen sink" as well as the "bathroom sink" at the Court in what appears to be an attempt to overwhelm both the Court and the County. It appears that the Plaintiff hopes the Court will not want to take the time and effort to sludge through all of his accusations and will decide instead to just let this matter proceed to trial.  The Court should not do so.

It should not do so because there is a glaring "disconnect" between the limited circumstances presented by the pleadings in this case and the many complaints made by

1

the Plaintiff against the general provision of medical care in the Dallas County Jail, primarily on at times subsequent to the Plaintiff's confinement in that Jail.[1]. Dr. Bowers testified, however, that he was never made aware of medical staff not responding to kites. (County Supp.App. 139, ll. 11-13).

This ought to be a simple case for analysis, both factually and legally. Plaintiff asserts he was denied medication. Thus, the focus should be on the County's policy regarding the distribution of medication to inmates in the Dallas County Jail and whether that policy was so deficient that it resulted in widespread and persistent constitutional violations prior to Plaintiff's confinement in October 2003 and that the Sheriff knew of these constitutional violations and deliberately chose not to do anything about those violations, again prior to Plaintiff's confinement in October 2003. The County will focus on these issues, once it has addressed the Plaintiff's attempt to reap the benefit of this Court's recent decision in the Palo case.

### Did the County cite the correct legal authorities?

The Plaintiff takes counsel for the County to task for citing opinions that deal with issues other than a "denial of medical care claim." Plaintiff misunderstands the reason that such opinions were cited. Only if the Court first finds an underlying constitutional violation, that is a denial of medical care which offends the Constitution, does the Court then address the role of the County in such underlying violation. If the Court should have to address the question of the County's role, the case law applicable to imposing Section 1983 liability on a municipality, such as the County, is not limited to just "denial of medical care" cases, but includes a variety of underlying constitutional

---

[1] For example, what difference does it make if not all inmates were screened at intake when the Plaintiff was screened. What difference does it make if the kite system did not work well when the Plaintiff claimed to be unable to read or write. (County App.036)

violations. Hence, the County's citation to those authorities is not only appropriate, but it is correct. Ironically, Plaintiff relies on an unpublished decision of the Fifth Circuit, Lawson v. Dallas County, to support its criticisms of the County. In addition to having no precedential value, that case has no relevance given that the incident at issue occurred in 1991, 12 years before Plaintiff's confinement and had nothing to do with the distribution of medications.

### Do the pleadings allege a "Conditions of Confinement" case?

The pleadings in this case do not give the County notice that the Plaintiff is asserting a "conditions of confinement" claim, as required by Fed.R.Civ.P. 8. The absence of both allegations of such a claim and the grounds upon which it rests distinguishes this case from the Palo case recently decided by this Court. In Palo, as this Court noted, Palo alleged in her complaint that Dallas County "failed to implement policies, practices and procedures that respect [Frank's] constitutional rights to adequate medical care and treatment, access to the courts, and freedom from punishment as a detainee." (Emphasis added). Unlike Palo, this Plaintiff did not make any allegation that his claim against the County concerned either punishment inflicted upon him or any right to be free from punishment, punishment being the "linchpin" to a "conditions" of confinement case. Nor does the Plaintiff use any pleading language other than that applicable to an "episodic acts or omission" case. Pl. Orig. Comp. at pp. 7-8, paragraph 19. Taking Plaintiff's pleadings as a whole, they are insufficient under Fed.R.Civ.P. 8(a) to give the County fair notice of a claim that it affirmatively put "conditions" into place with the intent to punish or that were not reasonably related to a legitimate governmental purpose.

3

## Is this a "Conditions of Confinement" or an "Episodic Omissions" case and does it really matter?

Plaintiff asserts his claims fit under both a "conditions of confinement" case and an "episodic act and omissions" case. The authority is to the contrary. See, e.g., Flores v. County of Hardeman, TX., 124 F.3d 736, 738 (5th Cir. 1997)(rejecting attempt to plead both an "episodic" case and a "conditions" case). The present case is a classic example of "episodic acts or omissions" and should be governed by the law applicable to such a case. As the Fifth Circuit noted in Hare v. City of Corinth, 74 F.3d 633, 644-645 (5th Cir. 1996), a true jail "condition of confinement" case starts with the assumption that the State intended to cause the alleged constitutional deprivation. In the present case, there is no contention that the County affirmatively acted with the intent not to provide a means for the distribution of medication to inmates in the Dallas County Jail.

Several Fifth Circuit opinions also confirm that the Plaintiff's claim is properly characterized as an "episodic acts or omissions" case. For example, in Scott v. Moore, 114 F.3d 51 (5th Cir. 1997)(en banc), the plaintiff asserted a claim under Section 1983 and alleged that a sexual assault by an officer was due to inadequate staffing. The Fifth Circuit explained that where a detainee complains of the number of bunks in a cell, or his television or mail privileges, or overcrowding, or visitation privileges, "the wrong of which the detainee complains is a general condition of confinement." Id. at 53. On the other hand, where an actor is interposed between the detainee and the County, such that the detainee complains first of a particular act or omission by the County actor and then points to a policy (or lack thereof) of the County that permitted or caused the act or omission, the case is properly characterized as an "acts or omissions" case. Id. With this background, the Fifth Circuit construed the plaintiff's claim in Scott as an "acts or

omissions" case.

In <u>Sibley v. Lemaire</u>, 184 F.3d 481 (5th Cir. 1999), the plaintiff asserted a claim under Section 1983 and alleged that the defendants were responsible for a general policy at the prison of denying mentally disturbed inmates reasonable medical care and that the policy was not related to a legitimate governmental goal. <u>Id.</u> In affirming the trial court's summary judgment in favor of the defendants, the Fifth Circuit specifically noted that "the appropriate analysis was not whether the conditions of confinement were responsible for [the plaintiff's] injuries. Rather, [the plaintiff's] case should be examined as an 'episodic act or omission' case." <u>Id.</u> (quoting <u>Scott</u>, 114 F.3d at 53).

Further, in <u>Gibbs v. Grimmette</u>, 254 F.3d 545 (5th Cir. 2001), the plaintiff asserted a Section 1983 claim due to the policy at the jail that no pretrial detainees were given a tuberculosis skin test. Applying the standard announced in <u>Scott</u>, the Fifth Circuit analyzed the plaintiff's claim as an "episodic act or omission" case and determined that there was no deliberate indifference. <u>Gibbs</u>, 254 F.3d at 549-50.

Not only do these Fifth Circuit authorities put Plaintiff's claim squarely and solely within the definition of an "episodic act or omission" case, but so do the pleadings. Plaintiff's complaint is replete with allegations that attribute his "unconstitutional" treatment to the omissions of individuals. Those omissions are the center of the Plaintiff's allegations, not whatever "conditions" might have been present during his confinement.

### <u>What if this case is a "Conditions of Confinement" case</u>?

Should this Court, however, treat the present action as a "conditions" case, the analysis as to essential elements does not change in any material way. As the Fifth

Circuit has declared, the test for a "conditions" case is "functionally equivalent to a deliberate indifference inquiry." *See* Hare, 74 F.3d at 646.

> Whether one characterizes the treatment received by [the inmate] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the "deliberate indifference" standard articulated in Estelle.

*See* Wilson v. Seiter, 501 U.S. 294, 303-04 (1991). In addition, a claim under Section 1983 predicated on "conditions" at a detention facility requires an allegation and proof that the alleged condition amounted to punishment and that it was not reasonably related to a legitimate, non-punitive governmental objective. *See* Scott, 114 F.3d at 53. Nowhere in the record is evidence which, if believed, would establish that the asserted "conditions" were put into place prior to October 2003 and were in existence in October 2003 and were operative to cause medical personnel not to distribute prescribed medication to the Plaintiff and were adopted with the intent to punish and without any legitimate, non-punitive governmental objective. On the contrary, the intent of the County to provide for the distribution of medication is set forth in the contract between UTMB and the County, the existence of which is undisputed by Plaintiff (County App. 0017). And, that intent was confirmed by the deposition testimony of Dr. Bowers, who was Medical Director in the jail in 2003 and 2004. (County Supp. App. 149, l.24-151, l.4).

Even if this Court determines that a "conditions" case has been plead and there is sufficient evidence adduced for a reasonable factfinder to find that those conditions amounted to punishment and did not relate to a legitimate, non-punitive governmental objective, the Court must still address the County's role in those "conditions." The conditions asserted in this cause are unlike those that the Fifth Circuit has recognized as

"true conditions." As the Fifth Circuit recognized in Hare, in a true conditions case there is an affirmative act which puts the restriction in place, hence the reason the condition can be assumed to be the result of a deliberate decision of the entity. 74 F.3d at 644-645. In this case, however, there is no affirmative act by the entity which put in place whatever restrictions the Court finds in this case. The complaint in this case is with what was not affirmatively put into place. Before the Court can find the County liable for that omission under Section 1983, the Plaintiff must still establish the necessary requisites: (1) a widespread and persistent practice; (2) which the Sheriff, as policymaker for the County, knew had caused repeated constitutional violations (**not just "problems"**) prior to October 2003, which he intentionally refused to correct; **and** (3) which very same deficiency was the "moving force" behind the omissions of individuals in not giving the Plaintiff medication prescribed for him. A theory of recovery based on "conditions of confinement" does not allow the Plaintiff to circumvent these Section 1983 requirements.

### What is the correct threshold issue and what facts are material to that issue?

Material issues of fact are only those that might affect the outcome of the lawsuit under governing law. U.S. v. Francisco Corpus, et al., 491 F.3d 205, 209 (5th Cir. 2007), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Despite the Plaintiff's attempt to distract the Court by his focus on "conditions" in the Dallas County Jail, the correct threshold issue in this case concerns the both the knowledge and conduct of individual medical personnel assigned to duty in the Dallas County Jail. Plaintiff misstates the legal principles which govern this case by addressing the issue of the County's deliberate indifference first, before addressing the issue of whether any particular individual was guilty of subjective, deliberate indifference. The County's

7

brief setting forth the governing law parallels the correct legal principles: (1) was there deliberate indifference by individual County employees directly caused by (2) deliberate indifference of the County policymaker, in this case, the Sheriff. The applicable standards consist of two levels of deliberate indifference. Gonzalez v. Ysleta Independent School Dist., 996 F.2d 745, 758 (5th Cir. 1993)( a policy of deliberate indifference imposing Section 1983 liability on an entity is independent from the state-of-mind deliberate indifference establishing the underlying constitutional violation).

The first level of deliberate indifference is that set forth in Farmer v. Brennan, 511 U.S. 825 (1994) and its progeny. Thus, Plaintiff's argument about the general inadequacy of medical care in the Dallas County Jail is flawed because it concentrates on the alleged deliberate indifference of the entity, the County, without first considering whether there is evidence of deliberate indifference by individuals. Flores, 124 F.3d at 738. No authority known to counsel would allow the Plaintiff to sidestep the question of individual conduct and prevail solely on the issue of the County's deliberate indifference. A correct ordering of this Court's decision will address the threshold issue of wrongful conduct by individual employees before it addresses the subsequent issue of County liability, and then only if the evidence establishes an underlying constitutional violation.

As to the threshold issue, the first level of deliberate indifference, the evidence is simply insufficient to establish subjective, deliberate indifference to Plaintiff's health. Based on only paragraphs 4-8 of the Plaintiff's affidavit (Pl. App. 006-007), which consists of little more than 100 words, Plaintiff expects this Court to conclude that a jury could find in his favor on the issue of subjective deliberate indifference by unnamed and unidentified medical personnel, at unidentified times and under unidentified

circumstances. And, importantly, Plaintiff appears to rely solely on his lay testimony to establish that he suffered a stroke on January 22, 2004, which he may not do. Walker v. Shansky, 28 F.3d 666, 672 (7th Cir. 1994). And, Plaintiff is less than candid with the Court when he fails to mention his prior stroke and the effects of that stroke on him, as he admitted. (County App.035).

A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or only a scintilla of evidence. Turner v. Baylor Richardson Med. Center, 476 F.3d 337, 343 (5th Cir. 2007). The evidence submitted by the Plaintiff amounts to nothing but conclusory statements and to no more than a scintilla of evidence.

In addition to Plaintiff's declaration being conclusory, so is the declaration of his expert, Lambert King, M.D. This declaration fails to offer this critical opinion and to back it up with medical facts and reasoning: would the Plaintiff not have suffered an injury on January 22, 2003 if he had received the medication Clonidine throughout his confinement in the Dallas County Jail. Instead, the opinion offered on causation is superficial, at best. This expert fails to take into consideration that Plaintiff had already suffered a stroke prior to coming to the Dallas County Jail or that the medication prescribed, even if taken religiously, is not a guarantee that no stroke will be suffered. In addition, the expert's opinions regarding the omissions in this case are meaningless. He may use the appropriate legal jargon, but there is no evidence that he has an appreciation of the meaning of the legal terms he uses and no evidence that his use of those terms corresponds with the terms applicable to this case. Moreover, expert testimony or opinion is ordinarily insufficient to establish deliberate indifference. See Conner v. Travis County, 209 F.3d 794, 798 (5th Cir. 2000); Snyder v. Trepagnier, 142 .3d 791, 799 (5th

9

Cir. 1998).

No reasonable jury could find by a preponderance of the evidence that there was both knowledgeable and deliberate indifference to a substantial risk of serious harm by particular medical personnel. The factfinder would be left with too many unanswered questions. For example, (1) did each member of the medical staff who was to distribute medication to the Plaintiff have enough information so that he or she actually knew the seriousness of the Plaintiff's circumstances; (2) was that information sufficient to establish that each such individual actually draw the inference that Plaintiff was subject to a serious risk of harm if he did not receive his medication every day and (3) did those same individuals then deliberately and wantonly (as opposed to negligently) refuse to give Plaintiff medication prescribed to him. The legal conclusion of "deliberate indifference" must rest on facts clearly evincing "wanton" acts. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992). The failure of any particular member of the medical staff to accurately perceive that this particular inmate was then subject to a risk of stroke does not constitute deliberate indifference. Hare, 74 F.3d at 649.

The medical records establish that on October 4, 2003 the Plaintiff was actually screened at intake (negating any claim that he has subject to this "condition") by medical personnel who duly noted his medical condition and history. (County App. 029). A standing order was entered requiring vital signs be taken for 3 days, which was done. Id. 030, 035. Plaintiff was scheduled to see a nurse practitioner on October 7, but refused to see her. There was nothing about the Plaintiff's vital signs as recorded up to this point that necessarily required medication. Pl. App. 143, p. 32, ll. 8-22. On October 14, 2003

nurse practitioner Moody made the medical decision to put the Plaintiff on aspirin and hydrochlorothiazide, an alternative blood pressure medication, a medical judgment she was trained to make. (County Supp. App. 152, l.7-153,l.14). Plaintiff and his expert may disagree with that medical judgment and other medical decisions made, but such disagreements do not equal deliberate indifference. Domino v. Texas Dept. of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001). Plaintiff was seen by medical personnel on a somewhat regular basis thereafter from late October and through November, with no apparent problem with blood pressure.   On November 27, Plaintiff's blood pressure was tested and it was high.  The response: Dr. Flangin ordered the medication Clondine and blood pressure checks for 3 days.   Those checks were done.   (County App. 038). Admittedly there was a delay in starting this prescription, but, according to the Medication Adminstration Record for December (County Supp. App. 086), it was begun on December 3 and, according to the records, was given routinely thereafter.

Yes, the Plaintiff's challenges the accuracy of those records, but as earlier mentioned, his challenge is conclusory. Ironically, Plaintiff does not assert that he did not receive the other medications (including one for blood pressure) prescribed to him and he does not challenge the medical records related to those prescriptions.   (County App. 087,088,090). The factfinder is left in the dark as to the circumstances underlying this alleged denial of medications.  For example, there is no dispute that the medication was prescribed and given to the Plaintiff on some occasions.  On the other occasions, did the individuals passing the medications just unilaterally decide not offer medication to the Plaintiff or did the Plaintiff ask for the medication and was then refused?  For another example, Plaintiff asserts that the records are falsified, but offers no evidence to support

this bold assertion.   His claim that the records must be falsified because there are markings in the record for dates after he left the Jail is erroneous.   Those markings include the entry "PMH," Parkland Memorial Hospital, as of January 23 and the letter "H," hospital, on subsequent dates. This is not evidence sufficient to establish that the records were falsified.[2]

Given the absence of such important evidence, no factfinder could find that Plaintiff actually made any particular individual in the Dallas County Jail aware of the serious risk facing him and that this same individual then consciously and deliberately disregarded that risk.   Without such evidence, there can be no subjective, deliberate indifference attributable to particular members of the medical staff (as opposed to medical staff in general).   And, thus, there is no underlying constitutional violation.

Even construed in his favor, Plaintiff's evidence establishes no more than negligence, which falls short of a constitutional violation. The facts do not ever rise above anything more than a mere failure to act on the part of individuals. The necessary circumstances to infer that such failure was knowing, intentional and wanton are simply absence from this record.   In the absence of such evidence, no factfinder could so conclude that there was subjective, deliberate indifference, and summary judgment is therefore appropriate.   And, it is appropriate without addressing whether or not Dallas County has adequately handled the issue of medical care in its jail.   For in the absence of an underlying constitutional violation, the state of the medical care system at the Dallas County Jail is quite beside the point.

---

[2] These particular omissions from Plaintiff's evidence are important to the later inquiry into whether the omissions of the individuals were driven by a known deficiency in the County's practices.

## Does the evidence establish a deliberate decision by the County to violate the Constitution and was that decision the moving force behind any underlying violation?

Even if the Court concludes Plaintiff's evidence is sufficient to raise an issue of fact as to deliberate indifference on the part of any particular employee, this Court must still determine whether the County is legally responsible for such violation under 42 U.S.C. §1983. As this Court knows well, Section 1983 offers no respondeat superior liability. Whether this is an "episodic omissions" or a "conditions" case, the evidence must establish that the harm done to the Plaintiff occurred because of the County's decision to violate the Constitution. It does not establish such a decision.

At most the Plaintiff's evidence establishes a failure to follow policies and practices. There is no dispute that there was a system in place and a practice of distributing medications twice a day in the jail and method for addressing kites sent by inmates. A failure to give inmates prescribed medications or to follow doctor's orders or to heed kites sent by inmates was a violation of County policy. (County Supp. App. 151, ll. 5-16; 165, l.24-167, l.3). A failure of execution in policy does not, as a matter of law, constitute a basis for liability against the County. Lopez v. Houston Indep. School Dist., 817 F.2d 351, 354 (5th Cir. 1987).

### 1. What was the moving force behind the conduct of individuals?

Plaintiff relies on documents, most of which are inadmissible or irrelevant[3], regarding the generalized provision of medical care in the Jail, rather than evidence directly connected to the specific failure alleged in this case, that is, the failure of medical personnel to actually give him medication already prescribed to him. This requirement of a causal connection is not only an essential element of the County liability issue, but it is

---

3  The County has filed objections to those documents.

a <u>stringent</u> standard, a standard <u>more than a mere "but for"</u> coupling between the cause (the deficiency in County policy) and the effect (the failure of each employee to act). There must be an <u>affirmative</u> link between whatever deficiency in County policy is established by the evidence and the conduct of each specific employee. <u>Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force</u>, 379 F.3d 293, 310 (5th Cir. 2004); <u>Victoria W. v. Larpenter</u>, 369 F.3d 475, 482 (5th Cir. 2004).

The evidence simply does not satisfy this heightened requirement, the "moving force" requirement. As mentioned earlier, the evidence must clearly establish what specifically any particular individual failed to do and why he or she so failed. The factfinder needs to know the particulars of any individual's failure to act to be able to ascertain that such failure was driven by the County, and was not just the independent act of an individual.   There is no such evidence establishing such a connection.

In this case, the bold allegation is that individuals falsified the Plaintiff's Medication Administration Records for December 2003 and January 2004. To support this assertion Plaintiff refers the Court to a memo from Kristin Branam dated September 23, 2004 (Pl. App. 413). There is no way to read that memo, obviously generated months after the Plaintiff left the jail, to establish that there were known cases of falsification of medical records. And, more importantly, the proof is that even just the possibility of a falsification was not going to be tolerated.  (Pl. App. 415-416). See also Deposition of Dr. Bowers (County Supp. App. 131, l.13-132, l.14; 142, ll.7-14).

### 2. Is there proof of more than an inadequacy in policy?

It is very easy for the Plaintiff now to point to things the County "should have done" or "could have done" done a better job of handling the issue of medical care in

general in the Jail. Should haves" and "could haves," however, are not the proper measure of deliberate indifference.  As the Supreme Court cautioned in City of Canton v. Harris, 489 U.S. 378, 391-2 (1989), "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a §1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident."

There is no dispute that there was a practice in place in that contemplated that medications prescribed would actually be given to inmates.  The criticisms of the Dallas County Jail by either the Health Management Associates Report or the Department of Justice, all rendered in hindsight, are virtually meaningless to this particular case. These reports are meaningless because neither constitutes evidence that prior to October 2003 (when Plaintiff came to the Dallas County Jail) the practice with regard to the distribution of medication had come to the Sheriff's attention as such that had persistently and repeatedly caused constitutional violations. Plaintiff simply fails to demonstrate the requisite pattern of violations prior to October 2003 necessary to establish the second level of deliberate indifference. Specifically, Plaintiff fails to establish a pattern of incidents similar to his own in which other inmates were similarly harmed, again prior to October 2003. Davis v. City of N. Richland Hills, 406 F.3d 375, 383 (5th Cir. 2005); Cozzo v. Tangipahoa Parish Council, 279 F.3d 273, 286-87 (5th Cir. 2003).

Plaintiff's criticisms point to nothing more than an "unwise" decision by the Commissioners Court to contract with UTMB and the "bad act" of not wasting taxpayers money and deciding for themselves what the staffing needs of the Dallas County Jail were, without deferring to the opinions of others.   A pattern of violations cannot be established simply by "bad or unwise acts" or at an excessively high level of generality or

by only a handful of tangentially related incidents.  Roberts v. City of Shreveport, 397 F.3d 297, 293-294 (5th Cir. 2005).  Rather, the pattern established by the evidence must point to (anticipate, if you will) the specific violation alleged to have occurred in this case.  Whatever pattern is established by the evidence simply does not point to the conclusion that the County's policies would necessary result in the denial of medication to the Plaintiff.

Plaintiff berates the County at length for "underfunding" and "understaffing" the jail.  The only evidence is the request by the Sheriff and Dr. Bowers for more money, more staff. Such a request means little in the context of government, as there is no such agency that cannot always use more money and more staff.  What is missing from the complaints about "underfunding" and "understaffing" is proof that such monetary decisions had actually caused widespread and persistent denials of medications to inmates and then, despite such proof, no additional funds or staffing were forthcoming. The Court can search all the documents in this case and it will find no such evidence. Important in this regard is the testimony of Dr. Flangin that the lack of staffing did not create a problem with inmates receiving their medications.  Pl. App. 139, p. 13, ll. 12-15.

Even in the reports from HMA and the Department of Justice and the Texas Commission on Jail Standards, there is no evidence of cases of inmates being prescribed medications, but then not given those medications prior to October 2003 in such numbers sufficient to establish, as a matter of law, both a persistent and widespread problem similar to that alleged in this case. *See, e.g.*, Pineda v. City of Houston, 291 F.3d 325, 329 (5th Cir. 2002)(rejecting 11 incidents as evidence of a pattern of constitutional violations). And, there is certainly no evidence that approaches proof that the decisions of the

16

Commissioners with regard to staffing and funding were inadequate to the decree that they were "so obvious" and "so likely to result in the violation of constitutional rights," as is required. <u>Snyder,</u> 142 F.3d at 799. Given that the Dallas County Jail housed approximately 90,000 - 100,000 inmates in any given year (Pl. App. 005), if there were indeed ongoing and widespread constitutional violations that caused inmates to be denied prescribed medications, one would expect them to have been uncovered by the HMA report or the Department of Justice or the Commission on Jail Standards and Plaintiff should be able to concisely point them out to the Court. He has not done so.

### 3. <u>Did the Sheriff deliberately choose to ignore a widespread and persistent pattern of constitutional violations?</u>

No evidence establishes that there was a pattern of constitutional violations that was so pervasive that the Sheriff actually knew about the problem with the distribution of medication (and the extent of the problem) substantially prior to October 2003 and then, despite such knowledge, and again prior to October 2003, <u>deliberately chose not do anything.</u> The requisite decree of fault must be shown by proof of circumstances that gave the Sheriff notice of repeated constitutional violations and an opportunity to conform to constitutional dictates, which opportunity he deliberately declined. It must be emphasized that the HMA report itself is proof that the County did not ignore the possibility of problems arising out of having UTMB provide medical care. When the suggestion of problems was raised in the Mims case and brought to the County's attention, the response was the solicitation of an expert, Dr. Piusis, to not only determine the nature and extent of the problems, but to make recommendations on how to solve the problem. This is far short of deliberate indifference. That the County might have been inattentive to problems prior to the engaging Dr. Piusis falls short of deliberate

17

indifference.  Colle v. Brazos County, Tex., 981 F.2d 237, 245 (5th Cir. 1993)(omission

must amount to an intentional choice, not merely unintentionally negligent oversight.)

All three of these requisites must be satisfied for Section 1983 liability to be

imposed on the County. The failure of Plaintiff to establish even one of them, let alone all

of them, justifies summary judgment in the County's favor.

Despite the "bulkiness" of the summary judgment record, this is not a case that

justifies a trial on the issue of the County's liability. As the Supreme Court has

acknowledged, only a high degree of fault on the part of the County's policymaker can

support liability.  To allow this case to proceed on the evidence in this record would

sanction "lesser requirements of fault and causation," a result prohibited by the dictates of

the Supreme Court. Canton, 489 U.S. at 394.

> Respectfully submitted,
>
> CRAIG WATKINS
> DISTRICT ATTORNEY
>
> /s/ Dolena T. Westergard
> DOLENA T. WESTERGARD
> ASSISTANT DISTRICT ATTORNEY
> TEXAS BAR NO. 21219800
> FEDERAL SECTION
> FRANK CROWLEY COURTS BLDG
> 133 N. INDUSTRIAL BLVD., LB 19
> DALLAS, TEXAS 75207-4399
> (214) 653-3692
> (214) 653-2899 (FAX)
>
> ATTORNEYS FOR DEFENDANT

18

## CERTIFICATE OF SERVICE

I certify that a copy of this reply was served on Plaintiff's counsel by electronically filing it, as required.

/s/ Dolena T. Westergard
DOLENA T. WESTERGARD

19