LAW OFFICES OF
## DON TITTLE
ATTORNEY AT LAW

CHATEAU PLAZA, SUITE 1400
2515 McKINNEY AVENUE
DALLAS, TEXAS 75201

TELEPHONE
(214) 522-8400

FACSIMILE
(214) 953-0583

December 14, 2007

Hon. Sidney A. Fitzwater
U.S. District Judge
1100 Commerce, 15th Floor
Dallas, TX   75242

Re:     Civil Action No. 3:05-CV-1442-D; *Stanley Shepherd v. Dallas County, Texas*

Dear Judge Fitzwater:

Stanley Shepherd brings this case under 42 U.S.C. § 1983 asserting constitutionally inadequate medical care in the Dallas County Jail.

As part of Mr. Shepherd's evidence in his response to Dallas County's motion for summary judgment, he submitted a report issued by the Department of Justice to Dallas County after the DOJ's investigation into medical conditions at the Jail.

On September 12, 2007, the DOJ filed suit against Dallas County and the Sheriff asserting:

> 13.     Defendants have engaged in and continue to engage in a pattern or practice of failing to protect inmates at the Dallas County Jail from serious harm and undue risk of serious harm by, <u>inter alia</u>, failing to provide safe and sanitary living conditions.

> 14.     The factual allegations set forth in paragraph 13 have been obvious and known to Defendants for a substantial period of time; yet Defendants have failed to address adequately the conditions described.

Complaint at 3.  That case, pending before Judge Godbey, is styled *United States of America v. Dallas County, et al,* No. 3:07-CV-1559-N.

On November 6, 2007, the parties in Judge Godbey's case entered into a consent decree whereby Dallas County and the Sheriff "consent to the entry of a finding that conditions at the DCJ [Dallas County Jail] necessitate the remedial measures contained in this Agreed Order."   Agreed Order at 2.   The consent decree requires Dallas County to initiate remedial measures to address the constitutionally inadequate deficiencies in

Hon. Sidney A. Fitzwater
December 14, 2007
Page 2

medical care at the Jail, as set forth in the previous DOJ report which Mr. Shepherd submitted as evidence.

Attached is a copy of the consent decree, which was issued <u>after</u> Mr. Shepherd filed his response to Dallas County's motion for summary judgment.

Sincerely,

Don Tittle

DAT/smb
Enclosure

cc:    Dolena T. Westergard
       ASSISTANT DISTRICT ATTORNEY
       133 N. Industrial Blvd., LB 19
       Dallas, Texas  75207-4399

       Robert Chaiken
       CHAIKEN & CHAIKEN
       13355 Noel Rd., Ste. 600
       Dallas, TX  75240

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV - 6 2007

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) |
| | )   Civil No. 307 CV 1559-N |
| DALLAS COUNTY, TEXAS; | ) |
| LUPE VALDEZ, | ) |
| SHERIFF OF DALLAS COUNTY, TEXAS | ) |
| (in her official capacity), | ) |
| | ) |
| DEFENDANTS. | ) |
| _____ | ) |

## AGREED ORDER

## I.   INTRODUCTION

A.   On November 28, 2005, the United States notified
     Dallas County officials of its intention to investigate
     conditions of confinement at the Dallas County Jail ("DCJ"
     or "the Jail"), pursuant to the Civil Rights of
     Institutionalized Persons Act, 42 U.S.C. § 1997.

B.   On February 20-24, 2006 and March 20-23, 2006, the
     United States toured DCJ with consultants in the fields of
     correctional health care, correctional mental health care,
     and environmental health.

C.   Throughout the course of the investigation, the
     United States received complete cooperation and access to
     all facilities and documents from the Dallas County
     Commissioners Court, Dallas County Sheriff's Office,
     University of Texas Medical Branch at Galveston, and
     Parkland Hospital.

D.   On December 8, 2006, the United States issued a findings
     letter pursuant to 42 U.S.C. § 1997 that concluded that
     certain conditions at DCJ violate the constitutional or
     statutory rights of individuals confined at the Jail.

- 2 -

E.    Defendants in this action are Dallas County, Texas; the
      Dallas County Sheriff; and their successors, contractors,
      and agents (collectively, the "County").  The County shall
      ensure that all County agencies take any actions necessary
      to comply with the provisions of this Agreed Order.

F.    The Court has jurisdiction over this action pursuant to
      28 U.S.C. § 1331, 28 U.S.C. § 1345, and 42 U.S.C. § 1997.
      Venue is proper in this district pursuant to 28 U.S.C.
      § 1391(b).

G.    For the purposes of this lawsuit only and in order to
      settle this matter, the Defendants consent to the entry of
      a finding that the conditions at DCJ necessitate the
      remedial measures contained in this Agreed Order.  As
      indicated in Section VII of this Agreed Order, the parties
      consent to a finding that this Agreed Order complies in all
      respects with the provisions of the Prison Litigation Reform
      Act, 18 U.S.C. § 3626(a).

H.    No person or entity is intended to be a third-party
      beneficiary of the provisions of this Agreed Order for
      purposes of any civil, criminal, or administrative action,
      and accordingly, no person or entity may assert any claim or
      right as a beneficiary or protected class under this Agreed
      Order.  This Agreed Order is not intended to impair or
      expand the right of any person or organization to seek
      relief against the Defendants or their officials, employees,
      or agents for their conduct.  This Agreed Order does not
      alter legal standards governing any such claims, including
      those standards established by Texas law.

## II.    DEFINITIONS

A.    "DCJ" or "the Jail" shall refer to the Dallas County Jail
      and shall include the Suzanne Kays Detention Facility; the
      Decker Detention Facility; the George Allen Courts Building;
      and the adjoining Lew Sterrett Center Tower Facilities
      ("Lew Sterrett"); as well as any facility that is built,
      leased, or otherwise used, to replace or supplement the
      Jail.

B.    "DOJ" shall refer to the United States Department of
      Justice, which represents the United States in this matter.

C.    "Effective date" shall mean the date the Agreed Order is
      signed and entered by the Court.

- 3 -

D.  "Include" or "including" shall mean "include, but not be limited to" or "including, but not limited to."

E.  "Inmate" or "inmates" shall be construed broadly to refer to one or more individuals detained at, or otherwise housed, held, in the custody of, or confined at either the existing Jail or any institution that is built or used to replace the Jail or any part of the Jail.

F.  Consistent with, or in accordance with, the term "generally accepted professional standards of care" shall mean a decision by a qualified professional that is substantially aligned with contemporary, accepted professional judgment, practice, or standards as to demonstrate that the person responsible based the decision on such accepted professional judgment.

G.  "Quality Assurance" means a system of self-audit and improvement to assess the implementation and effectiveness of all remedies instituted pursuant to this Agreed Order, to identify deficits that may exist, and to effectuate new measures to cure deficits identified.

H.  "Qualified Medical Professional" shall mean a licensed physician, licensed physician assistant, or a licensed nurse practitioner, who is currently licensed by the State of Texas to deliver those health care services they have undertaken to provide.

I.  "Qualified Medical Staff" shall refer to qualified medical professionals and qualified nursing staff.

J.  "Qualified Mental Health Professional" shall refer to: a) an individual with a minimum of masters-level education and training in psychiatry, psychology, counseling, social work or psychiatric nursing, who is currently licensed by the State of Texas to deliver those mental health services they have undertaken to provide.

K.  "Qualified Mental Health Workers" and "Qualified Mental Health Staff" shall refer to individuals with a minimum of a bachelor's degree and two years of experience providing mental health services.

L.  "Qualified Nursing Staff" means registered nurses and licensed practical nurses currently licensed by the State of Texas to deliver those health services they have undertaken to provide.

- 4 -

M.   "Suicide Precautions" means any level of watch, observation, or measures to prevent self-harm.

N.   "Train," means to instruct in the skills addressed to a level that the trainee has the demonstrated proficiency to implement those skills as and when called for in the training.  "Trained" means to have achieved such proficiency.

O.   Throughout this Agreed Order, the following terms are used when discussing compliance:  substantial compliance, partial compliance, and non-compliance:  "Substantial compliance" indicates that the Jail has achieved compliance with most or all components of the relevant provision of the agreed Order. "Partial compliance" indicates that compliance has been achieved on some of the components of the relevant provision of the Agreed Order, but significant work remains. "Non-compliance" indicates that most or all of the components of the Agreed Order provision have not yet been met.

- 5 -

### III.  SUBSTANTIVE PROVISIONS

A.  MEDICAL CARE

1.  <u>Intake screening</u>:

    a.  Defendants shall implement and comply with
policies to provide adequate medical and mental
health intake screening to all inmates; shall
provide a 14-day health assessment and
examination; shall ensure continuation of
prescription medications within 24 hours of
intake; shall comply with stated policies to
screen inmates for infectious disease; shall
continue to provide mental health evaluations for
all inmates whose histories or whose responses to
initial screening questions indicate a need for
such an evaluation; shall provide accurate
diagnoses for inmates in need of mental health
services; and shall continue to provide timely and
appropriate referrals for specialty care.

    b.  Records documenting the assessment and results
shall become part of each inmate's medical record.
A re-admitted inmate or an inmate transferred from
another facility who has received a documented
full health assessment within the previous three
months and whose receiving screening shows no
change in the inmate's health status need not
receive a new full physical health assessment.
For such inmates, qualified personnel shall review
prior records and update tests and examinations as
needed.

    c.  When the initial clinical health screening
indicates that an inmate has acute health or
mental health needs, Defendants shall provide
timely care by trained and licensed medical staff,
registered nurses, or mental health professionals
as soon as medically necessary, but no later than
twenty-four (24) hours after the initial health
screening.  Defendants shall schedule individuals
with chronic health or mental health needs, and
those who are pregnant but who present in a stable
condition, to be seen by medical staff or mental
health professionals as soon as medically
necessary.  Incoming inmates who present with
current risk of suicide or other acute mental

- 6 -

health needs will be immediately referred for a mental health evaluation by a mental health professional.  Staff will observe such inmates until they are seen by mental health professionals. Incoming inmates reporting these conditions will be housed under appropriate conditions unless and until a mental health care professional clears them for housing in segregation or with the general population.

2.    Acute care:

a.    Defendants shall provide adequate and timely acute care for inmates with serious and life-threatening conditions, and ensure that such care adequately addresses the serious medical needs of inmates. Adequate care will include timely medical appointments and follow-up medical treatment.

b.    Defendants shall train correctional officers to recognize and respond to medical and mental health emergencies, and shall ensure that inmates with emergency medical or mental health needs are promptly referred and transported for outside care when the facility is unable to provide appropriate care.

3.    Chronic care:

a.    Defendants shall adopt and implement a system to track inmates with serious and/or chronic illnesses, including mental illnesses, to ensure that these inmates receive necessary diagnosis, monitoring and treatment.

b.    Defendants shall implement a medication continuity system so that incoming inmates' medication for serious medical needs can be obtained in a timely manner, as medically appropriate when medically necessary.  Within twenty-four hours of an inmate's arrival at the facility, or sooner if medically necessary, the County shall decide whether to continue the same or comparable medication for serious medical needs as an inmate reports on arrival that she or he has been prescribed.  If the inmate's reported medication is discontinued or changed by medical staff,

medical staff shall evaluate the inmate face-to-face as soon as medically appropriate. The County shall develop and implement a protocol and screening tool to guide staff in gathering necessary information and present such information to medical staff for medication continuity decisions.

c.    Defendants shall ensure that inmates who need skilled nursing services or assistance with activities of daily living shall receive medically appropriate care.

d.    Defendants shall maintain an updated log of inmates with chronic illness. Defendants shall keep records of all care provided to inmates diagnosed with chronic illnesses in the inmate's individual medical record.

4.    <u>Treatment and Management of Communicable Disease</u>:

a.    Defendants shall implement and refine their communicable disease testing, monitoring, and treatment programs. Defendants shall continue to test for tuberculosis ("TB") all inmates arriving at the jail upon booking and will follow-up on test results as medically indicated.

b.    Defendants shall develop and implement infection control policies and procedures to prevent the spread of infections or communicable diseases, including TB and Methicillin Resistant *Staphylococcus aureus* ("MRSA"), consistent with generally accepted professional standards of care.

c.    Defendants shall establish effective infection control programs, including programs for TB and skin infections, that:

    i.    actively collect data regarding infections and communicable diseases;
    ii.    assess this data for trends;
    iii.    initiate inquiries regarding problematic trends;
    iv.    identify necessary corrective action;
    v.    monitor to ensure that appropriate remedies are achieved; and

- 8 -

    vi.  integrate this information into the Jail's quality assurance review.

    d.  Defendants shall develop and implement adequate guidelines to ensure that inmates receive appropriate wound care.  Such guidelines will include precautions to limit the possible spread of communicable diseases.

    e.  Defendants shall ensure that the specialized respiratory isolation ("negative pressure") and HVAC (heating, ventilating and air-conditioning) systems function properly.

5.   <u>Access to Health Care</u>:

    a.  Defendants shall ensure that inmates have adequate access to appropriate health care.

    b.  Defendants shall ensure that the medical request ("sick call") process for inmates is adequate and facilitates adequate access to medical care.

    c.  The sick call process shall include procedures for logging, tracking, and timely responses by medical staff.

    d.  Defendants shall develop and implement an effective system for triaging sick call requests based upon the urgency of the medical issue.

6.   <u>Follow-Up Care</u>:

    a.  Defendants shall provide adequate follow up care and maintain appropriate records for inmates who return to the Jail following hospitalization.

    b.  Defendants shall ensure that inmates who receive specialty or hospital care are evaluated upon their return to the Jail and that, at a minimum, discharge instructions are recorded in the inmate's medical records and appropriately followed.

- 9 -

7.   Record Keeping:

   a.   Defendants shall ensure that medical records
        are maintained consistent with generally
        accepted professional standards of care.

   b.   Defendants shall ensure that DCJ medical and
        mental health records are centralized,
        complete, and accurate.  To ensure continuity
        of care, medical record information shall be
        submitted to outside medical providers when
        inmates are sent out of the Jail for medical
        care, and reports and records from those
        providers will be returned with the inmates
        to the Jail.

   c.   Defendants shall maintain unified medical and
        mental health records including documentation
        of inmates' psychiatric histories and
        individual mental health assessments.

8.   Medication Administration:

   a.   Defendants shall ensure that treatment and
        administration of medication to inmates is
        implemented in accordance with generally
        accepted professional standards of care.
        Defendants shall develop policies and
        procedures for the accurate administration of
        medication and maintenance of medication
        records.  Defendants shall provide a
        systematic physician review of the use of
        medication to ensure that each inmate's
        prescribed regimen continues to be
        appropriate and effective for his or her
        condition.

   b.   Defendants shall ensure that medication
        administration is hygienic and recorded
        concurrently with administration.

9.   Medical Facilities:

   a.   Defendants shall ensure that sufficient
        clinical space is available to provide
        inmates with adequate medical care services
        including:  intake screening; sick call;
        physical assessment; and acute, chronic,

- 10 -

emergency, and speciality medical care (such as for geriatric or pregnant inmates).

b.   Defendants shall ensure that medical areas are adequately clean and maintained, including installation of adequate lighting in medical exam rooms.  All hand washing stations in medical areas shall be fully equipped, operational, and accessible.

10.   Specialty Care:

a.   Defendants shall ensure that inmates whose serious medical or mental health needs extend beyond the services available at the Jail shall receive timely referral for specialty care to appropriate medical or mental health care professionals qualified to meet their needs, in accordance with generally accepted professional standards of care.

b.   Defendants shall ensure that inmates who have been referred for outside specialty care by the medical staff or another specialty care provider are scheduled for timely outside care appointments and transported to their appointments.  Inmates awaiting outside care shall be seen by medical staff as medically necessary to evaluate the current urgency of the problem and respond as medically appropriate.

c.   Defendants shall obtain records of care and diagnostic tests received during outside appointments in a timely fashion and include such records in the inmate's medical record or document the inmate's refusal to cooperate and release medical records. Following a visit to an outside specialist, medical staff, mental health staff, or a dentist shall review information and documentation available from the visit and provide reasonable follow-up care.

d.   Defendants shall maintain a current log of all inmates who have been referred for outside specialty care, including the date of the referral, the date the appointment was

- 11 -

scheduled, the date the appointment occurred and the reason for any missed or delayed appointments, and information on follow up care, including the dates of any future appointments.

e.   Defendants shall ensure that pregnant inmates are provided adequate pre-natal care in accordance with generally accepted professional standards of care.

11.   <u>Staffing, Training, and Supervision</u>:

a.   Defendants shall provide adequate staffing and training of medical, mental health, and correctional staff necessary to ensure that adequate medical and mental health care is provided.

b.   Defendants shall ensure that medical staff receive adequate physician oversight and supervision.

c.   Defendants shall ensure that services and procedures, such as medication administration and use of cut-down tools, are performed by nurses or other properly trained staff.

d.   Defendants shall provide adequate numbers of correctional staff to ensure inmates have access to appropriate medical care.

e.   Defendants shall conduct initial and periodic training for all correctional staff on how to recognize symptoms of mental illness and respond appropriately.  Such training shall be conducted by qualified mental health professionals and shall include instruction on how to recognize and respond to mental health emergencies.

12.   <u>Quality Assurance Review</u>:

a.   The Defendants shall develop and implement quality assurance programs adequate to identify and correct serious deficiencies in medical care, mental health care, suicide prevention, sanitation, and fire safety.

- 12 -

13. <u>Dental Care</u>:

    a.  Defendants shall ensure that inmates receive adequate dental care consistent with generally accepted professional standards of care and that such care be provided in a timely manner.

    b.  Defendants shall ensure that inmates with emergency dental needs shall receive such care immediately. Adequate dentist hours will be provided to avoid unreasonable delays in dental care.

B.  MENTAL HEALTH CARE

Defendants shall provide adequate mental health care to address inmates' serious mental health needs.

1.  <u>Timely and Appropriate Evaluation</u>:

    a.  Defendants shall provide develop and implement policies and procedures to appropriately assess inmates with mental illness, and evaluate inmates' mental health needs.

    b.  Defendants shall ensure that the intake evaluation process includes a mental health screening, which shall be incorporated into the corresponding inmate's medical records. Defendants shall ensure timely access to a qualified mental health professional when presenting symptoms of mental illness require such care.

    c.  Defendants shall ensure that the mental health screening process includes inquiry regarding:

        (1)  past suicidal ideation and/or attempts,
        (2)  current ideation, threat, or plan,
        (3)  prior mental health treatment or hospitalization,
        (4)  recent significant loss, such as the death of a family member or close friend,
        (5)  history of suicidal behavior by family members and close friends,
        (6)  suicide risk during any prior confinement, and

- 13 -

       (7)   any observations of the transporting officer, court, transferring agency, or similar individuals regarding the inmate's potential suicide risk.

    d.   Defendants shall ensure adequate and timely treatment for inmates whose assessments reveal serious mental illness, including timely and appropriate referrals for specialty care and regularly scheduled visits with qualified mental health professionals.

    e.   Defendants shall ensure an adequate array of crisis services to appropriately manage the psychiatric emergencies that occur among inmates.  Crisis services shall not be limited to administrative segregation or observation status.  Inmates shall have access to appropriate licensed in-patient psychiatric care when clinically appropriate.

2.   <u>Assessment and Treatment</u>:

    a.   Defendants shall ensure that treatment plans adequately address inmates' serious mental health needs and that the plans contain interventions specifically tailored to the inmates' diagnoses.

    b.   Defendants shall provide for an inmate's reasonable privacy in medical and mental health care, and maintain confidentiality of inmates' medical and mental health status, subject to legitimate security concerns and emergency situations.

    c.   Defendants shall provide adequate on-site psychiatric coverage for inmates' serious mental health needs and ensure that psychiatrists see inmates in a timely manner.

    d.   Defendants shall ensure that disciplinary charges against inmates are reviewed by a qualified mental health professional to determine the extent to which the charge was related to serious mental illness, to ensure that inmates who commit infractions resulting from a serious mental illness are not punished

- 14 -

for behavior caused by mental illness, and to ensure that an inmate's serious mental illness is used as a mitigating factor, as appropriate, when punishment is imposed on inmates with a serious mental illness.

e.   Defendants shall ensure that mentally ill inmates in segregation receive timely and appropriate treatment, including completion and documentation of regular rounds in the segregation units at least once per week by adequately trained qualified mental health professionals in order to assess the serious mental health needs of inmates in segregation. Inmates with serious mental illness who are placed in segregation shall be immediately and regularly evaluated by a qualified mental health professional to determine the inmate's mental health status, which shall include an assessment of the potential effect of segregation on the inmate's mental health. During these regular evaluations, Defendants shall evaluate whether continued segregation is appropriate for that inmate, considering the assessment of the qualified mental health professional, or whether the inmate would be appropriate for graduated alternatives.

3.   Psychotherapeutic Medication Administration:

a.   Defendants shall ensure that psychotherapeutic medication administration is provided in accordance with generally accepted professional mental health care standards.

b.   Defendants shall ensure that pyschotropic medication orders are reviewed by a psychiatrist on a regular, timely basis for appropriateness or adjustment.

c.   Defendants shall ensure timely implementation of physician orders for medication and laboratory tests.  Defendants shall ensure that inmates who are being treated with psychotropic medications are seen regularly by a physician to monitor responses and potential reactions to

- 15 -

those medications, in accordance with generally accepted correctional mental health care standards.

4.    Suicide Prevention:

a.    Defendants shall develop policies and procedures to ensure the appropriate management of suicidal inmates, and shall establish a suicide prevention program in accordance with generally accepted professional standards of care.

b.    Defendants shall ensure that suicide prevention procedures include provisions for constant direct supervision of actively suicidal inmates and close supervision of special needs inmates with lower levels of risk (e.g., 15 minute checks). Officers shall document their checks. Suicide prevention policies shall include procedures to ensure the safe housing and supervision of inmates based on the acuity of their mental health needs.  Cells for suicidal inmates shall be retrofitted to render them suicide-resistant (e.g., elimination of protrusive shower heads, exposed bars, unshielded lighting or electrical sockets).

c.    Defendants shall ensure that all staff are trained on suicide response, prevention, and detection.  Staff posts will be equipped with 911 rescue tools.

d.    Defendants shall ensure adequate administrative mortality and morbidity review of custodial suicides and serious suicide attempts review following a custodial suicide or suicide attempt.  At a minimum, the review shall include:

(1)    critical review of the circumstances surrounding the incident;
(2)    critical review of procedures relevant to the incident;
(3)    synopsis of all relevant training received by involved staff;
(4)    pertinent medical and mental health services/reports involving the victim;

- 16 -

    (5)   possible precipitating factors leading to the suicide or attempt; and

    (6)   recommendations, if any, for changes in policy, training, physical plant, medical or mental health services, and operational procedures.

C.   SANITATION AND ENVIRONMENTAL CONDITIONS

   1.   <u>Sanitation of Laundry</u>:

     a.   Defendants shall develop and implement policies and procedures for laundry procedures to protect inmates from risk of exposure to contagious disease, bodily fluids, and pathogens.  Defendants shall ensure that inmates are provided clean clothing, underclothing and bedding in compliance with policy, and that the laundry exchange schedule provides equitable distribution and pickup service to all housing areas.

     b.   Defendants shall train staff and educate inmates regarding laundry sanitation policies.

   2.   <u>Protection from Biohazards</u>:

     a.   Defendants shall develop and implement policies and procedures for cleaning, handling, storing, and disposing of biohazardous materials. Defendants shall ensure that any inmate or staff utilized to clean a biohazardous area are properly trained in universal precautions, are outfitted with protective materials, and receive proper supervision when cleaning a biohazardous area.

     b.   Defendants shall provide and ensure the use of cleaning chemicals that sufficiently destroy the pathogens and organisms in biohazard spills.

     c.   Defendants shall ensure biohazard disposal containers in medical areas are properly installed and positioned so as to limit unnecessary risk to staff.

- 17 -

    d.   Defendants shall secure all sharp medical tools.

    e.   Defendants shall destroy any mattress that cannot be sufficiently sanitized to kill bacteria.

3.   <u>Environmental Control</u>:

    a.   Defendants shall ensure adequate control and observation of jail cell environs, including razors and cleaning supplies.  All cleaning tools and hazardous chemicals shall be removed from housing areas after use.

    b.   Chemical cleaning agents shall be safely stored, used, and mixed.  Inmates provided cleaning agents shall receive training on the safe storage, use, and mixture of chemical cleaners.

4.   <u>Maintenance and Sanitation of Facilities</u>:

    a.   Defendants shall immediately revise and implement written housekeeping and sanitation plans to ensure the proper routine cleaning of housing and shower areas, and medical areas.

    b.   Defendants shall implement a preventive maintenance plan to respond to routine and emergency maintenance needs, including maintenance of shower, toilet, and sink units.

5.   <u>Fire and Life Safety</u>:

    a.   Defendants shall ensure that the Jail has adequate fire and life safety equipment, including installation and maintenance of fire alarms in all housing areas.  Defendants shall ensure that all fire and life safety equipment is properly maintained and inspected, with adequate documentation thereof.

    b.   Defendants shall implement competency-based testing for staff regarding fire/emergency procedures.

- 18 -

    c.    Defendants shall ensure that emergency keys are appropriately marked and identifiable by touch and consistently stored in a quickly accessible location, and that staff are adequately trained in use of the emergency keys.

    d.    Defendants shall control combustibles and eliminate highly flammable materials throughout inmate living areas.

**IV.   REPORTING REQUIREMENTS AND RIGHT OF ACCESS**

A.   Defendants shall submit quarterly compliance reports to the United States, the first of which shall be filed within 90 days of the date of this Agreed Order. Thereafter, the quarterly reports shall be filed fifteen (15) days after the termination of each four-month period thereafter until the Agreed Order is terminated.

B.   Each compliance report shall describe the actions the Defendants have taken during the reporting period to implement this Agreed Order and shall make specific reference to the Agreed Order provisions being implemented.

C.   Defendants shall maintain sufficient records to document that the requirements of this Agreed Order are being properly implemented and shall make such records available to the DCJ at all reasonable times for inspection and copying by the United States. In addition, Defendants shall maintain and submit upon request records or other documents to verify that they have taken such actions as described in their compliance reports (e.g., census summaries, policies, procedures, protocols, training materials, and incident reports) and will also provide all documents reasonably requested by the United States.

D.   The United States and its attorneys, consultants, and agents, and any other persons authorized by the parties, shall have unrestricted access to the Jail, Jail inmates, Jail staff (including staff at DCJ employed by Parkland or any other outside medical services provider), and documents as reasonably necessary to address issues affected by this Agreed Order.

- 19 -

E.  Within 30 days of receipt of written questions from the
    DOJ concerning Defendants' compliance with the
    requirements of this Agreed Order, Defendants shall
    provide the DOJ with written answers and any requested
    documents.

F.  Defendants shall appoint a compliance coordinator to
    oversee compliance with this Agreed Order and to serve as
    a point of contact.

G.  The parties have, by separate agreement, agreed upon an
    Independent Monitor to assist Defendants in achieving
    compliance with the provisions of this Agreed Order, to
    report those opinions to the parties, and to provide
    Defendants with technical assistance in attaining
    compliance with the Agreed Order.  The parties agree to
    file these reports with the Court on a routine basis for
    the Court's information.

    **V.   CONSTRUCTION, IMPLEMENTATION AND TERMINATION**

A.  Defendants shall implement all reforms necessary to
    effectuate this Agreed Order.  The implementation of this
    Agreed Order will begin immediately upon the filing of
    this Agreed Order before the United States District Court
    for the Northern District of Texas.  As needed,
    Defendants shall retain the services of third-party
    consultants to provide technical assistance regarding the
    implementation of the substantive provisions contained in
    Section III of this Agreed Order.

B.  Except where otherwise specifically provided, Defendants
    shall complete implementation of all provisions of this
    Agreed Order within 180 days of the entry of this Agreed
    Order.

C.  This Agreed Order shall terminate four years from the
    date the Agreed Order is ordered by the Court.  The
    Agreed Order may terminate earlier if Defendants have
    substantially complied with each of the provisions of the
    Agreed Order and has maintained substantial compliance
    for at least two years.  The burden shall be on
    Defendants to demonstrate this level of compliance.
    Noncompliance with mere technicalities, or temporary
    failure to comply during a period of otherwise sustained
    compliance will not constitute failure to maintain
    substantial compliance.  At the same time, temporary
    compliance during a period of sustained noncompliance

- 20 -

shall not constitute substantial compliance.  If after
four years Defendants have failed to comply with the
requirements of this Agreed Order, the United States has
the right to seek relief from the United States District
Court of the Northern District of Texas.

D.   Failure by either party to enforce this entire Agreed
Order or any provision thereof with respect to any
deadline or any other provision herein shall not be
construed as a waiver of its right to enforce other
deadlines or provisions of this Agreed Order.

E.   If any unforseen circumstance occurs that causes a
failure to timely carry-out any requirements of this
Agreed Order, Defendants shall notify the DOJ in writing
within 20 calendar days after Defendants become aware of
the unforseen circumstance and its impact on the
Defendant's ability to perform under the Agreed Order.
The notice shall describe the cause of the failure to
perform and the measures taken to prevent or minimize the
failure.  Defendants shall implement all reasonable
measures to avoid or minimize any such failure.

F.   This Agreed Order shall constitute the entire integrated
Agreed Order of the parties.  With the exception of DOJ's
findings letter referenced in paragraph (I)(D) herein and
any DOJ technical assistance recommendations, no prior or
contemporaneous communications, oral or written, will be
relevant or admissible for purposes of determining the
meaning of any provisions herein in this litigation or in
any other proceeding.

G.   The Agreed Order shall be applicable to, and binding
upon, all parties, their officers, agents, employees,
assigns, and their successors in office.

H.   Each party shall bear the cost of their fees and expenses
incurred in connection with this cause.

I.   In the event that any provision of this Agreed Order is
declared invalid for any reason by a court of competent
jurisdiction, said finding shall not affect the remaining
provisions of this Agreed Order.

- 21 -

## VI.  STIPULATION PURSUANT TO THE PRISON LITIGATION REFORM ACT, 18 U.S.C. § 3626

A.   For the purposes of this Agreed Order only and in order
     to settle this matter, the Parties stipulate that this
     Agreed Order complies in all respects with the provisions
     of 18 U.S.C. § 3626(a).  The Parties further stipulate
     and agree that the prospective relief in this Agreed
     Order is narrowly drawn, extends no further than
     necessary to correct the violations of federal rights
     alleged by the United States, is the least intrusive
     means necessary to correct these violations, and will not
     have an adverse impact on public safety or the operation
     of a criminal justice system.  Accordingly, the Parties
     agree and represent that the Agreed Order complies in all
     respects with the provisions of 18 U.S.C. § 3626(a).

B.   The issue of liability has not been litigated.

C.   This Agreed Order is not intended to have any preclusive
     effect except between the Parties.  Should the issue of
     the preclusive effect of this Agreed Order be raised, the
     Parties agree to certify that this Agreed Order was
     intended to have no such preclusive effect.

- 22 -

FOR THE UNITED STATES:


RICHARD B. ROPER
United States Attorney
Northern District of Texas
1100 Commerce Street, Suite 300
Dallas, Texas   75242-1699


JOHN R. PARKER
Chief, Civil Division
United States Attorney's Office
Northern District of Texas
1100 Commerce Street
Suite 300
Dallas, Texas   75242-1699


RENA J. COMISAC
Acting Assistant Attorney
 General
Civil Rights Division


SHANETTA Y. CUTLAR
Chief
Special Litigation Section


DANIEL H. WEISS
Deputy Chief


DAVID DEUTSCH
Senior Trial Attorney


WILLIAM E. NOLAN
Trial Attorney
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Ave., NW
Washington, D.C.   20530

- 23 -

FOR DALLAS COUNTY, TEXAS:


_____
JAMES FOSTER
Dallas County Judge
Dallas County
Commissioners Court


_____
LUPE VALDEZ
Sheriff
Dallas County


_____
PETER HARLAN
Assistant District
Attorney for Dallas County
Dallas County

- 24 -

SO ORDERED this __6__ day of _November_, 2007:

UNITED STATES DISTRICT COURT
JUDGE
NORTHERN DISTRICT OF TEXAS