IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STANLEY SHEPHERD, §
§
§
          Plaintiff, §
§ Civil Action No. 3:05-CV-1442-D
VS. §
§
DALLAS COUNTY, TEXAS, §
§
          Defendant. §

MEMORANDUM OPINION
AND ORDER

In this lawsuit brought under 42 U.S.C. § 1983 against
defendant Dallas County, plaintiff alleges that he was denied
constitutionally adequate medical treatment while held as a
pretrial detainee at the Dallas County Jail (the "Jail"). Dallas
County moves for summary judgment. For the reasons that follow,
the court grants the motion in part and denies it in part.

I

Stanley Shepherd was arrested on a drug possession charge and
booked into the Jail as a pretrial detainee. Upon arrival,
Shepherd told the intake nurse that he had a history of
hypertension and other chronic illnesses and that he was taking
medications, including twice daily doses of the blood pressure
medication Clonidine. Shepherd had none of his medications with
him when he was booked, and he was dependent on the Jail medical
providers to dispense them.

One week later, Shepherd had a blood pressure reading over
175/101, and he again told a nurse that he required Clonidine.

Three days later, Shepherd repeated his request for blood pressure medication, and one nurse recorded in his records that Shepherd "wants and insists on Clonidine." The nurse prescribed a different high blood pressure medication—hydrochlorothiazide. Although prescribed, Shepherd rarely received the medication, sometimes waiting weeks between single doses.[1]

Shepherd was later brought to the clinic complaining of a severe headache, and his blood pressure was measured at 165/117. Kathryn Flangin, M.D. ("Dr. Flangin") ordered that Shepherd be given one dose of Clonidine and that his blood pressure be checked for three days. This was Shepherd's first dose of Clonidine in the Jail.

Shepherd's blood pressure was checked again four days later and recorded at 181/133, a blood pressure reading that is considered by at least one of Shepherd's treating nurses to be a "hypertensive emergency." P. App. 183.[2] At that time, he was

---

[1]Shepherd attests to this in a sworn affidavit. Dallas County objects both to this affidavit and the affidavit of his wife, contending that they generally contain "conclusory statements." Dallas County does not specify these supposed conclusory statements, nor does the court perceive any defects in the statements on which it has relied in this decision. Accordingly, the objections are overruled.

[2]Dallas County objects to this testimony as an improper expert opinion, but the court does not rely on this testimony to show that Shepherd was, in fact, experiencing a "hypertensive emergency." Rather, the relevance of this evidence is to show that at least one of Shepherd's treating nurses would have considered this blood pressure reading to be dangerously high. Accordingly, this objection is overruled. Dallas County also contends, without

given a single dose of nitroglycerin that reduced his blood pressure to 148/93. Dr. Flangin also ordered that Clonidine be administered to Shepherd twice daily for 60 days. Two days later, Shepherd's blood pressure was recorded at 242/132. A nurse noted on Shepherd's chart that he "has not received his Clonidine as ordered." Shepherd was administered an initial dose of Clonidine at that time, which reduced his blood pressure to 158/100.

For the next seven weeks, no medical provider monitored Shepherd's blood pressure, nor did Shepherd receive his medication as prescribed. Shepherd repeatedly complained about not receiving his blood pressure medication. Shepherd's wife, aware of the situation, made numerous calls to the Jail——sometimes speaking with medical staff——expressing her concern that Shepherd would have a stroke if he did not receive his medication regularly.

Shepherd later went to the nurses station complaining of left-sided weakness and lightheadedness. Mary Basham ("Nurse Basham"), a nurse, measured Shepherd's blood pressure at 189/125. She reported the high blood pressure reading to Dr. Flangin, who ordered the nursing staff to re-check his blood pressure that evening and for the next three days, and ordered that he be given

citing authority, that this evidence is irrelevant absent proof that it was reported to the policymaker. This objection rests on a mistaken view of the law, *see infra* at §§ III(A) and IV(A), and is overruled. Finally, Dallas County objects that this evidence is pure conjecture. This objection is also overruled. The nurse's testimony was based on his personal experience and a review of Shepherd's medical records, not on conjecture.

doses of Lasix and Lopressor. When Nurse Basham told Shepherd to return to his cell, he protested that something was wrong. One hour later, he was found lying on the floor of his cell, with slurred speech, diaphoretic sweating, and left-sided weaknesses. He was immediately taken by ambulance to the hospital. For the next two days, Jail staff continued to indicate in Shepherd's records that they were administering Clonidine and other medications to him, even though this would have been impossible because he was no longer detained at the Jail.

At the hospital, doctors concluded that Shepherd had suffered a stroke because of a hypertensive emergency. He remained hospitalized for 26 days before being discharged to the Veterans Administration rehabilitation center. He has been permanently confined to a wheelchair since that time, has lost most of his left-side functions, suffers impairment of his left eye and the hearing in his left ear, and has slurred speech.

Shepherd filed this suit against Dallas County under § 1983, alleging that the failure to provide him with proper medical care violated his rights under the Fifth and Fourteenth Amendments, and other unspecified federal laws. Dallas County moves for summary judgment.

A

"Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law." *Colson v. Grohman*, 174 F.3d 498, 504 n. 2 (5th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984)). "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates. Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citations and internal quotation marks omitted) (quoting *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)). Shepherd bases his § 1983 claim on allegations that the unconstitutional conduct of Dallas County deprived him of due process under the Fifth and Fourteenth Amendments.

B

Although the state has an important interest in the incarceration of pretrial detainees and convicted state prisoners,

> [t]he State's exercise of its power to hold
> detainees and prisoners . . . brings with it a
> responsibility under the U.S. Constitution to
> tend to the essentials of their well-being:
> "[W]hen the State by affirmative exercise of
> its powers so restrains an individual's
> liberty that it renders him unable to care for
> himself, and at the same time fails to provide
> for his basic human needs . . . it
> transgresses the substantive limits on state

> action set by the Eighth Amendment and the Due
> Process Clause."

*Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)). Convicted prisoners derive their right to have these basic needs met from the Eighth Amendment's prohibition on cruel and unusual punishment. *Id.* Pretrial detainees, on the other hand, having not been adjudged guilty of any crime and therefore not punishable at all, derive their protections from the due process guarantees of the Fourteenth Amendment. *Id.; Bell v. Wolfish,* 441 U.S. 520, 535-36 (1979). These protections are said to be "at least as great as . . . [those] available to a convicted prisoner." *Hare,* 74 F.3d at 639 (internal quotation marks omitted). Therefore, because Shepherd is a pretrial detainee, the operative question is whether he suffered a violation of his Fourteenth Amendment rights.

The applicable standard for making this determination depends on whether the constitutional challenge is based on a "condition of confinement" or an "episodic act or omission." *Flores v. County of Hardeman*, *Tex.*, 124 F.3d 736, 738 (5th Cir. 1997) (citing *Hare*, 74 F.3d at 644). Where the claim is based on a condition of confinement, "the constitutional challenge is to the 'general conditions, practices, rules, or restrictions of pretrial confinement.'" *Palo ex rel. Estate of Palo v. Dallas County,* 2007 WL 2140590, at *2 (N.D. Tex. July 26, 2007) (Fitzwater, J.) ("*Palo*

*II*") (quoting *Hare*, 74 F.3d at 644).  By contrast, where the claim is based on an episodic act or omission, "the complained-of harm is a particular act or omission of one or more officials, and the case focuses on 'whether [the] official breached his constitutional duty to tend to the basic human needs of persons in his charge.'" *Id.* (quoting *Hare*, 74 F.3d at 645).

Shepherd raises both types of challenges, and the court addresses each in turn.

III

A

In a § 1983 condition of confinement case, the pretrial detainee attacks the general conditions, practices, rules, or restrictions of pretrial confinement, and courts apply a test that the Supreme Court announced in *Bell*.  *See Hare*, 74 F.3d at 644. The *Bell* test is designed to "determin[e] whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word." *Bell*, 441 U.S. at 538.  It requires a court to decide whether "the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.*

To determine whether the condition is an unconstitutional punishment, the court asks whether the "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective[.]" *Id.* at 539.  If it is, the

- 7 -

condition or restriction does not amount to unconstitutional "punishment." *Id.* "Conversely, if a restriction or condition is not reasonably related to a legitimate goal——if it is arbitrary or purposeless——a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* Unlike an episodic act or omission claim, a condition of confinement claim involves no independent inquiry into the Jail officials' state of mind, such as whether they acted with "deliberate indifference." *Palo II,* 2007 WL 2140590, at *2 (citing *Hare,* 74 F.3d at 643; *Grabowski v. Jackson County Pub. Defenders Office*, 47 F.3d 1386, 1398 (5th Cir. 1995)). This is because the conditions perpetuated by Jail officials "manifest[ ] an avowed intent to subject a pretrial detainee" to those conditions. *Hare,* 74 F.3d at 644; *see also id.* ("[E]ven where a State may not want to subject a detainee to inhumane conditions of confinement or abusive Jail practices, its intent to do so is nevertheless presumed when it incarcerates the detainee in the face of such known conditions and practices."). Thus the inquiry in a condition of confinement case begins with the presumption that intent exists and applies the test articulated in *Bell*, upholding the condition or restriction only if it is reasonably related to a legitimate governmental objective. *Id.* at 644-45; *Bell*, 441 U.S. at 539.

B

The court turns first to Dallas County's contention that Shepherd has failed adequately to plead a conditions of confinement claim.

1

Fed. R. Civ. P. 8(a)(2) provides that a pleading that states a claim for relief must be "a short and plain statement of the claim showing that the pleader is entitled to relief." The essential function of notice pleading is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)). A pretrial detainee can allege a § 1983 claim for a Fourteenth Amendment due process violation arising from the conditions of confinement by pleading facts that support the finding that he was subjected to Jail conditions that were not reasonably related to a legitimate governmental objective. *See Bell*, 441 U.S. at 539.

2

Dallas County argues in its reply brief that Shepherd has only pleaded an episodic act or omission case, rather than a condition of confinement case. In an episodic act or omission case

> an actor usually is interposed between the
> detainee and the municipality, such that the
> detainee complains first of a particular act
> or omission by the actor, and then points
> derivatively to a policy, custom, or rule (or
> lack thereof) of the municipality that
> permitted or caused the act or omission.

*Palo II,* 2007 WL 2140590, at *4-*5 (internal quotation marks

omitted) (quoting *Stephens v. Dallas County, Tex.*, 2007 WL 34827,

at *5 (N.D. Tex. Jan. 4, 2007) (Kinkeade, J.)). An instructive

example of an episodic act or omission case is found in *Scott v.

Moore,* 114 F.3d 51 (5th Cir. 1997). In *Scott* the Fifth Circuit

concluded that although the plaintiff had generally complained of

Jail conditions that permitted an officer on duty to sexually

assault her, "the actual *harm* of which she complain[ed] is the

sexual assaults committed by [the defendant] during the one

eight-hour shift——an episodic event perpetrated by an actor

interposed between Scott and the city, but allegedly caused or

permitted by the aforesaid general conditions." *Id.* at 53. The

panel held that because "Scott did not suffer from the mere

existence of the alleged inadequate staffing, but only from Moore's

specific sexual assaults committed on but one occasion," the claim

was properly treated as an act or omission claim and analyzed under

the framework articulated in *Hare.* *Id.* at 53-54.

As this court has previously explained, a condition of

confinement claim based on inadequate medical treatment differs

from an episodic act or omission claim because, unlike in *Scott*, it

"does not focus solely on the acts or omissions of the staff on duty at the Jail. Rather, [it] also attacks the Jail medical care system itself." *Palo II,* WL 2140590, at *4. "In *Scott* the plaintiff would not have been sexually assaulted had it not been for the actions of the guard[,]" but in a condition of confinement case, a plaintiff alleges that "the inadequate system of medical care caused him to suffer a deprivation of his constitutional rights." *Id.*

3

Applying these principles to the present case, it is clear that Shepherd has alleged a condition of confinement claim. Shepherd avers that "there is no policy or procedure . . . for how [new] inmates . . . are to receive their medication or be referred to a physician . . . . Consequently, many inmates . . . fail to receive medication for chronic illnesses such as hypertension." Compl. 5. He avers that "the process for evaluation of inmates with chronic illnesses is grossly inadequate," and that "none of the inmates with chronic illnesses . . . are ever seen by a physician for a clinical examination appropriate for their condition." *Id.* He alleges that "staffing levels at the Jail are so inadequate that the nurses on duty are overwhelmed by the number of requests for care[.]" *Id.* He maintains that, as a result, nurses only examine "approximately 25% of the inmates requesting care" for an "average of approximately three and a half minutes per

patient including travel to and from housing units." *Id.* 5-6.

The court need not recount the other allegations in Shepherd's complaint that support Shepherd's condition of confinement claim, because these are sufficient to give "fair notice" of that claim, *Oliver,* 276 F.3d at 741, and, in particular, that Shepherd was subjected to Jail conditions that were not reasonably related to a legitimate governmental objective, *see Bell*, 441 U.S. at 539.[3]

Accordingly, the court overrules this ground for dismissing the claim.

C

The court next considers Dallas County's motion for summary judgment on the condition of confinement claim. Dallas County contends that Shepherd has failed to produce sufficient evidence to show that he was denied his constitutional right to medical treatment.

---

[3]Dallas County asserts that this case is analogous to Fifth Circuit decisions that analyzed cases solely as episodic act or omissions claims and required a showing of "deliberate indifference." *See Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001); *Sibley v. Lemaire,* 184 F.3d 481, 488 (5th Cir. 1999). Those decisions are distinguishable, however, because they involved lawsuits against *individual officials* rather than against municipalities. *See Gibbs*, 254 F.3d at 548; *Sibley*, 184 F.3d at 485-86, 488; *see also Farmer v. Brennan,* 511 U.S. 825, 834 (U.S. 1994) (holding that lawsuits against individual officials require showing of "deliberate indifference"); *Hare*, 74 F.3d at 645 (holding that "deliberate indifference" standard is employed within framework of episodic act or omission claim).

Because Dallas County will not have the burden of proof at trial on Shepherd's conditions of confinement claim, it can meet its summary judgment obligation by pointing the court to the absence of evidence to support it. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, Shepherd must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). Shepherd's failure to produce proof as to any essential element renders all other facts immaterial. *Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citing *Edgar v. Gen. Elec. Co.*, 2002 WL 318331, at *4 (N.D. Tex. Feb. 27, 2002) (Fitzwater, J.)). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in plaintiff's favor. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Summary judgment is mandatory if Shepherd fails to meet his burden. *Little*, 37 F.3d at 1076.

In opposing summary judgment, Shepherd has introduced an independent report by the consulting firm Health Management Associates ("HMA"), commissioned by Dallas County almost one year after Shepherd's stroke. Michael Puisis, M.D. ("Dr. Puisis") performed the onsite analysis and prepared a report (the "HMA

Report"). The HMA Report revealed systemic failures in the medical care provided at the Jail, including the fact that "[t]here is no policy or procedure for how inmates who come into the Jail at intake are to receive their medication or to be referred to a physical." P. App. 303. The system of inmate written requests for medical treatment was found inadequate, and although correctional health standards require that these requests be evaluated within 24 hours, Dr. Puisis observed that nurses were staffed to evaluate them only two days a week. There were, he reported, "multiple barriers to inmate access" to clinical evaluation by a nurse, *id.* at 305, and many more inmates were scheduled for evaluation than the nurses have time to see. Additionally, only one detention officer was available at any given time to escort inmates to the infirmary or medical staff to inmate housing units, as required by Jail policy. This restricts access of patients to medical treatment and was a "tremendous drag on the efficiency of staff." *Id.* at 306. Dr. Puisis also found that patients who entered the Jail and were on medication for chronic illnesses or serious mental disorders did not have their medication promptly restarted. He observed that the method of monitoring chronic illness patients at the Jail "is poor to non-existent." *Id.* at 330.

Shepherd also relies on a report by the Department of Justice ("DOJ"), which conducted onsite inspections of the Jail during a

two-month period in early 2006.[4]  DOJ found the results of its investigation to be consistent with the findings in the HMA Report, and concluded that the Jail had violated inmates' constitutional rights to medical care.  It found, *inter alia*, that Dallas County had failed to provide adequate nursing and physician care and that inmates routinely missed doses of necessary medications.  It also discovered, in an analysis of 316 referrals for specialty care, that the Jail had not scheduled a single appointment for any of these referrals one month after they were made, a practice that it considered to be "grossly inconsistent" with generally accepted standards of care.  *Id.* at 366.  The findings in this report, as well as those of the HMA report, are buttressed by the testimony of Steven Bowers, M.D. ("Dr. Bowers"), the Medical Director of the Jail, who considered them both to be generally accurate.

Shepherd has proffered the foregoing reports as summary judgment evidence.  He has also identified five specific inadequacies at the Jail, relying in part on these reports and on other evidence.  First, he alleges that there is ineffective communication between detention officers and medical staff.  Dr. Bowers testified that medical staff are not notified when inmates are moved from one Jail tower to another, and there is no process to enable communication between the detention staff and the medical

---

[4]Dallas County objects to this report for essentially the same reasons it did in *Palo II,* 2007 WL 2140590, at *7-*9.  The court overrules the objections on the same grounds.  *See id.*

staff to ensure that the medical providers know where the patients are located.  As a result, the medical providers waste much of their time trying to research and track down the inmates, leading to the worsening of some chronic conditions.

Second, Shepherd maintains that inmate access to medical treatment is inadequate, citing the fact that just before Shepherd arrived at the Jail, only 45 or 70% of all prisoner requests for treatment were being answered timely (depending on the facility in which they were located).

Third, he alleges inadequate staffing of Jail detention officers to escort medical staff and inmates to medical appointments.  As evidence, he relies on the HMA findings, testimony by Dr. Bowers confirming that medical care was hampered because of inadequate staffing, and testimony to the same effect by Kristin Brannam ("Brannam"), the person in charge of monitoring Dallas County's contract with the University of Texas Medical Branch at Galveston for medical treatment in the Jail.

Fourth, Shepherd posits that the Jail suffered from inadequate staffing of medical professionals.  The HMA and DOJ reports devoted considerable attention to this issue, some of which the court has recounted above.  Dr. Bowers also testifies that he repeatedly complained to supervisors about the need for more staffing and resources from the time he began working for the Jail in 1993 to the present.  There is evidence that, at least once, Jail

facilities were left unattended by a nurse through an entire weekend, resulting in the failure to dispense medications for two days, and that on another, one nurse was left to administer care for 3,000 inmates.

Fifth, Shepherd complains of the inadequate system for dispensing medications. According to the HMA Report, detainees who are taking medications for chronic illnesses when they enter the Jail do not have their medication promptly restarted. DOJ found that the Jail frequently failed to do the following: (1) administer medications in accordance with prescriptions; (2) maintain inmate medication administration records concurrently with distribution; and (3) follow general standards of care to monitor and adjust inmates' prescribed medication regimens. There is evidence that some medical technicians did not deliver medications as required, and also falsified records. The issues with understaffing, discussed above, exacerbated all these problems.

3

The court need not recount the remainder of evidence that Shepherd has introduced in support of his condition of confinement claim.[5] Based on the foregoing, the court concludes that Shepherd

_____

[5]Dallas County objects to Ex. Nos. 6-7, 9-12, 14-15, and 20 of Shepherd's evidence appendix. Because the court concludes, without considering the balance of the challenged evidence, that Shepherd has met his summary judgment burden, it need not decide any of Dallas County's objections that are not addressed in this memorandum opinion and order.

has adduced sufficient evidence to enable a reasonable jury to find that he was deprived of adequate medical care due to the conditions of his confinement.  Specifically, a reasonable jury could find that the medical care provided at the Jail suffered from various inadequacies, including ineffective communication, inadequate responses to requests for treatment, inadequate staffing, and inadequate medication administration.  The jury could also reasonably find, based on the evidence of Shepherd's own experiences at the Jail, *see supra* § I, that he was subjected to these inadequate medical conditions while he was a pretrial detainee.  Dallas County does not argue that the inadequate medical conditions of which Shepherd complains were reasonably related to a legitimate government purpose.  Therefore, a reasonable jury could find under the *Bell* standard that the conditions to which he was subjected were not reasonably related to a legitimate government purpose and therefore "punished" him, in violation of his Fourteenth Amendment rights.  *Bell*, 441 U.S. 538-39.[6]  Indeed, if the summary judgment evidence that this court has reviewed in *Palo II* and the present case is corroborated at trial, a reasonable

_____

[6]Dallas County advances the mistaken premise that Shepherd must produce evidence that there was an intent not to provide for adequate distribution of medications.  This is incorrect because, as the court has explained, if Shepherd adduces evidence of a condition of confinement that is not reasonably related to a legitimate government objective, Dallas County's intent to subject him to that condition is presumed.  *See Palo II,* 2007 WL 2140590, at *2-*3.

jury could easily find that at least some aspects of the medical care provided at the Dallas County Jail is *shockingly inadequate*, to the point that it deserves the strongest of rebukes.

## IV

The court now turns to Dallas County's motion for summary judgment on Shepherd's episodic act or omission claim.

## A

As noted above, an episodic act or omission claim is distinct from a condition of confinement claim because it involves a particular act or omission of one or more officials, whose intent to cause harm is not presumed. *See Hare,* 74 F.3d at 645. In proving this claim, Shepherd must show, first, that a county employee violated his rights to medical treatment with "subjective deliberate indifference." *Johnson v. Johnson County,* 2006 WL 1722570, at *3 (N.D. Tex. June 21, 2006 (Fitzwater, J.) (citing *Flores,* 124 F.3d at 738). Second, in order to hold Dallas County liable for this act, Shepherd must prove that the constitutional violation "resulted from a County policy or custom adopted or maintained with objective deliberate indifference." *Id.* (citing *Flores,* 124 F.3d at 738). The court need not reach the second step because Shepherd has failed to satisfy the first.

## B

Subjective deliberate indifference "cannot be inferred merely from a negligent or even a grossly negligent response to a

substantial risk of serious harm." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001) (citing *Hare*, 74 F.3d at 645, 649). Rather, "[d]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials 'refused to treat [the prisoner or detainee], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

In the context of an episodic failure to provide reasonable medical care to a pretrial detainee, this means that an official will not be found deliberately indifferent unless three things are established: "1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjectively intended that harm [to] occur." *Thompson*, 245 F.3d at 458-59.

Applying these principles to the present case, Shepherd must identify an official who knew that Shepherd had high blood pressure, understood the risks of high blood pressure, knew the appropriate level of treatment, was aware that Shepherd had been denied that level of treatment, and subjectively intended that this happen. This he has failed to do. Although Shepherd has

demonstrated that some personnel knew some of this information, and that others knew other facts, this is insufficient because knowledge is not to be imputed between coworkers. *See id.* (describing *subjective* inquiry). Of the evidence presented in response to Dallas County's summary judgment motion, the only colorable effort to identify a particular official with deliberate indifference is found in Shepherd's description about the day of his stroke. There, Shepherd emphasizes that Nurse Basham returned him to his cell despite his third high blood pressure reading in seven weeks, and despite his insistence that something was "very wrong." But given that Nurse Basham was acting under the orders of Dr. Flangin, who made the medical determination that Shepherd could be returned to his cell, this evidence is insufficient to show that Nurse Basham understood the risk of harm to Shepherd and desired that harm. As to Dr. Flangin, given that there is no indication that, on other occasions during the course of her treatment of Shepherd at the Jail, she had personally made incorrect medical decisions or otherwise had neglected his needs, a single isolated occurrence such as this is insufficient to enable a reasonable jury to find that she was deliberately indifferent.

In short, while the evidence Shepherd presents does create a fact issue as to whether Jail policies caused him to receive inadequate care, it does not create an issue as to whether any

particular Jail official was deliberately indifferent.[7]
Accordingly, the motion for summary judgment on Shepherd's episodic
act or omission claim is granted.

*     *     *

For the foregoing reasons, Dallas County's motion for summary
judgment is granted in part (as to Shepherd's episodic act or
omission claim) and denied in part (as to his condition of
confinement claim).

**SO ORDERED.**

March 6, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[7]Shepherd proffers the expert testimony of nurse Sharon Howard
and Lambert King, M.D., who have both concluded that Jail officials
were deliberately indifferent to Shepherd's needs.  For the same
reasons given in the court's opinion, these legal conclusions lack
evidentiary support and are insufficient to enable a reasonable
jury to find in Shepherd's favor on this claim.