# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **STANLEY SHEPHERD,** | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No.** |
| **v.** | § | **3:05-CV-1442-D** |
| | § | |
| **DALLAS COUNTY, TEXAS,** | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the District Court's Order of Reference [doc # 132], filed September 22, 2008,

Stanley Shepherd's ("Plaintiff") September 9, 2008 motion in support of application for award of

attorneys' fees and reimbursement of costs [doc #126] was referred to the United States Magistrate

Judge for hearing, if necessary, and recommendation. Plaintiff seeks attorney fees in the lodestar

amount[1] of $292,272.50,[2] together with a "modest multiplier of the lodestar based on the factors set

out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) ("the

*Johnson* factors.")[3] (Pl.'s Mot. at 7.) Also, Plaintiff initially sought "litigation costs" in the amount

---

[1] The lodestar amount is determined by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 661 (5th Cir. 2002) (quoting *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 192 (5th Cir. 1999)).

[2] The Court notes that a mistake in arithmetic reduces the amount claimed to $292,252.50. (Pl.'s App. at 0008.) Mr. Greg A. Gober's ("Mr. Gober") time of 70.80 hours at an hourly rate of $200 equals $14,160, rather than the $14,180 that Plaintiff's chart indicates. (*Id.*)

[3] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues involved; (3) the skill required to litigate the case; (4) the ability of the attorney to accept other work; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances of the case; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the attorney-client relationship; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717-19.

of $57,052.07, in addition to the court costs of $6,503.96 which were taxed by the Clerk of Court. (Pl.'s App. 0008-09.)  However, in a Supplemental Declaration supporting Plaintiff's Application for Reimbursement of Costs, Plaintiff admitted that the costs taxed by the clerk were duplicated and that the litigation expenses should be reduced to $49,798.11.  (Pl.'s App. 0046).  Plaintiff also seeks additional attorney fees in the amount of $2,010 in connection with the attorney fee application, as well as estimated attorney fees contingent on winning on appeal.  The Court has carefully considered the applicable authorities, the entire record, and the arguments of counsel at the November 17, 2008 hearing on Plaintiff's motion.  The Court recommends that the District Court award Plaintiff attorney fees in the amount of  $278,751.50  and $871.32 in allowable out-of-pocket litigation expenses, in addition to the $6,253.96 in costs taxed by the Clerk.  The Court also recommends that Plaintiff recover $2,010 in attorney fees for litigation of the attorney fee dispute.

I.    **Background**

Plaintiff brought this lawsuit pursuant to 42 U.S.C. § 1983 against Dallas County ("Defendant"), alleging that he was denied constitutionally-adequate medical treatment while he was held as a pretrial detainee at the Dallas County Jail.  He claimed that as a result of Defendant's conduct, he suffered grave injuries for which he should receive compensation in damages. Defendant denied that Plaintiff was subjected to conditions of confinement that violated his constitutional rights, or that Plaintiff suffered any injury that was proximately caused by any such conditions of confinement.

Defendant sought summary judgment, and the District Court denied the summary judgment motion in part and granted it in part.  The District Court found, *inter alia*, that Plaintiff adduced sufficient evidence to enable a reasonable jury to find that he was deprived of adequate medical care

due to the conditions of his confinement.  The District Court observed that if the summary judgment evidence was corroborated at trial, "a reasonable jury could easily find that at least some aspects of the medical care provided at the Dallas County Jail is *shockingly inadequate*, to the point that it deserves the strongest of rebukes."  (Mem. Op. & Order, doc. 87 at 18-19, emphasis in original.)  After a six-day jury trial, the jury returned a verdict in Plaintiff's favor, awarding damages.  The District Court entered an Amended Judgment in Plaintiff's favor against Dallas County in the amount of $890,336, together with post judgment interest and taxable court costs, as taxed by the Clerk of Court.  (Dkt. 124.)  The Clerk taxed Plaintiff's costs at $6,503.96.  (Dkt. 129.)

## II.    <u>Legal Standards</u>

Defendant does not question Plaintiff's status as the prevailing party and admits that no exceptional circumstances warrant the denial of attorney fees pursuant to 42 U.S.C. § 1988.  (Def.'s Resp. 2.)  *See Scham v. Dist. Courts Trying Criminal Cases*, 148 F.3d 554, 557 (5th Cir. 1998).  Rather, Defendant challenges the fees based upon the claims that counsel engaged in block billing, performed unnecessary work, and generated excessive billing.  (Def.'s Resp.)  Additionally Defendant claims that Plaintiff has not met his burden to justify the hourly rates that his counsel are requesting.  (*Id.*)  Finally, Defendant contends the lodestar amount should not be increased because Plaintiff's counsel were not the catalyst for the large amount of damages awarded by the jury.  (*Id.*)  Defendant also challenges the litigation expenses as not well documented, unreasonable, and unrelated to the "successful claim." [4]  (Id.)

---

[4]  Defendant initially claimed the litigation expenses were duplicative of the costs taxed by the clerk, but Plaintiff withdrew its request to the extent the costs were duplicative.  Accordingly, the Court need not address Defendant's claim that the expenses were duplicative.

The court's first step in calculating the amount of a reasonable attorney fee is to "determin[e] the compensable hours from the attorneys' time records, including only hours reasonably spent." *Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993) ("*Shipes II*"). When the documentation of hours is not adequate, the court may reduce the number of compensable hours. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court may also exclude any hours that it determines "are excessive, redundant, or otherwise unnecessary." *Id.* at 434.

Next, the court "must select an appropriate hourly rate based on prevailing community standards for attorneys of similar experience in similar cases." *Shipes II*, 987 F.2d at 319. The court then multiplies the number of compensable hours by the selected hourly rate to produce the lodestar amount. *Id.*; *see also Rutherford v. Harris County, Tex.*, 197 F.3d 173, 192 (5th Cir. 1999) (citing *League of United Latin Am. Citizens # 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997)). The burden to substantiate both the requested hours and the hourly rates rests upon the movant. *Hensley*, 461 U.S. at 437. Once the lodestar has been determined, the court may adjust it upward or downward, if the *Johnson* factors not "already considered in calculating the lodestar" warrant such an adjustment. *Shipes II*, 987 F.2d at 320 (citing *Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1980). However, the lodestar is presumptively reasonable and should be modified only in exceptional cases. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993), *on remand*, 852 F. Supp. 542 (S.D. Miss. 1994), *aff'd*, 49 F.3d 728 (5th Cir. 1995) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992), *on remand*, 976 F.2d 801 (2d Cir. 1991)).

**III**.    **Analysis**

Plaintiff seeks attorney fees for Robert L. Chaiken ("Mr. Chaiken"), his associate Mr. Gober, civil rights attorney Don A. Tittle ("Mr. Tittle"), and briefing and legal research counsel, Debbie

Branscum ("Ms. Branscum"). Plaintiff claims the following time was reasonably spent in litigation: 86.40 hours for the services of Mr. Chaiken; 70.8 hours for Mr. Gober; 504.15 hours for Mr. Tittle; and 238 hours for Ms. Branscum. Additionally, Plaintiff seeks an additional 6.7 hours expended by Ms. Branscum for legal research and briefing in connection with the attorney fee dispute.

### A.     Whether Reduction for an "Unsuccessful Claim" is Required

Defendant contends that the Court should significantly reduce the amount of compensable attorney time, urging that Plaintiff brought two claims in this case: (1) a "conditions of confinement claim" and (2) "an episodic acts and omissions claim." (Def.'s Resp. at 3-4.) Defendant urges that because the District Court granted summary judgment on Plaintiff's episodic acts and omissions claim, Plaintiff prevailed on only one claim, thus necessitating a significant reduction in attorney fees because the billing does not distinguish the time spent on the "unsuccessful claim" from time spent on the "successful claim." Plaintiff responds that he asserted only one civil rights claim, basing it upon two distinct theories of recovery. (Pl.'s Reply at 3-4.)

After a thorough review of this case and the applicable law, the Court finds that the episodic acts and omissions theory of recovery was not a distinct unsuccessful claim, as Defendant contends. The time Plaintiff's counsel spent developing and presenting Plaintiff's theory that Defendant's civil rights violations were based upon episodic acts or omissions should not be denied. The United States Supreme Court explained:

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 435.

In this case, Plaintiff, a pretrial detainee, brought one claim for Defendant's violation of his constitutional rights pursuant to 42 U.S.C. § 1983, alleging that Defendant's unconstitutional conduct deprived him of due process under the Fifth and Fourteenth Amendments and seriously damaged him. The District Court in this case recognized that the proper analysis applicable to due process challenges by pretrial detainees begins with a determination of the appropriate legal standard to apply. This requires classification of the challenge as an attack on a condition of confinement or as an episodic act or omission. *Palo v. Dallas County*, No. 3:05-CV-0527-D, 2007 WL 2140590, at *2 (N.D. Tex. July 26, 2007) (citing *Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997)). Appropriately, Plaintiff "raise[d] both types of challenges,"[5] and the District Court, after addressing each in turn, determined that, contrary to Defendant's contention, Plaintiff clearly alleged a condition of confinement claim. *Shepherd v. Dallas County, Tex.*, No. 3:05-CV-1442-D, 2008 WL 656889, at * 5 (N.D. Tex. March. 6, 2008).[6] However, the District Court held at the summary judgment stage that Plaintiff did not create a genuine issue of material fact with respect to whether any particular jail official was deliberately indifferent, thus eliminating Plaintiff's reliance on an episodic act or omission to prove his case. *Id.* Given the vigor with which Defendant defended this case, and the strong likelihood that the case would have ended at the summary judgment stage without a thorough and well-reasoned response to the summary judgment motion, Plaintiff obtained an excellent outcome. A plaintiff's good-faith raising of alternative legal

_____

[5] Defendant argued on summary judgment that Plaintiff only pleaded an episodic act or omission case, rather than a condition of confinement case.

[6] Defendant steadfastly maintained throughout the proceedings, including a motion for judgment as a matter of law, that this is not a legally-sustainable conditions of confinement case.

grounds for relief, even if a ground is rejected, is not a sufficient reason for reducing the plaintiff's attorney fee. *See Hensley*, 461 U.S. at 435. This proposition holds true here. The underlying facts that had to be discovered were relevant to both theories of recovery, and the time counsel devoted to the unsuccessful theory should not be stricken. Plaintiff should be awarded reasonable attorney fees for pursuing both a conditions of confinement theory of recovery and an episodic act and omission theory.

B.    **Whether the District Court Should Reduce Plaintiff's Attorney Fees for "Block Billing"**

Defendant objects to certain entries in counsels' contemporaneous billing records as "of particular concern" based upon what Defendant contends is Plaintiff's practice of "block billing." (Def.'s Resp. at 2, 4.) The District Court has recognized that "the term block billing 'refers to the time-keeping method by which each lawyer . . . enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Barrow v. Greenville Indep. School Dist.*, No. 3:00-CV-0913-D, 2005 U.S. Dist. LEXIS 34557, at *10 (N.D. Tex. Dec. 20, 2005), aff'd 2007 U.S. App. LEXIS 24778 (5th Cir. Oct. 23, 2007) (quoting *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc*., 82 F.3d 1533, 1554 n.15 (10th Cir. 1996)). Specifically, Defendant objects to the entries for Mr. Tittle for certain dates. The Court has abbreviated the entries for the challenged dates and recreated them in a chart attached hereto as "Exhibit A."

Defendant makes general and conclusory objections to these entries, claiming that the Court cannot ascertain what work performed was actually necessary, reasonable, and not redundant. (Def.'s Resp. at 3-4.) Defendant provides no guidance with respect to which tasks should be eliminated or reduced and for which of the three reasons noted. (*Id*.) Plaintiff replies that the time

entries group only two to three tasks a day, whereas the block billing that courts have reduced in other cases grouped as many as fifteen tasks a day. (Pl.'s Reply at 2-3.) Plaintiff contends the entries are specific enough for the Court to evaluate the reasonableness of the time spent. (*Id.*) The Court agrees, with limitations, that Plaintiff's position is correct.

The Court finds that the attorneys' contemporaneous time records in this case are not a model to be emulated. Counsel did not, for the most part, follow the preferred method of detailing tasks in small increments of time. However, the Fifth Circuit Court of Appeals has affirmed an award of attorney fees even though the billing records "lumped together" the time entries. *Hollowell v. Orleans Reg'l Hosp., LLC*, 217 F.3d 379, 392-93 (5th Cir. 2000). The district court had "found the . . . billing records specific enough to determine that the hours claimed were reasonable for the work performed." *Id.* at 393. The Fifth Circuit noted that "even a failure to provide contemporaneous billing statements 'does not preclude an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours.'" *Id.* at 392 n. 18 (quoting *La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 325 (5th Cir. 1995) (per curiam)). Thus, the question for the Court is not how many tasks are included in a designation, but whether the entries are adequate to determine the reasonableness of the hours claimed. *Id.*

Defendant objects to Mr. Tittle's March 10, 2005 entry of 5 hours to: "Review articles relating to jail healthcare; review Shepherd record." This appears to be Mr. Tittle's initial review of the proceedings. Irrespective of the amount of time he devoted to each of the two tasks, counsel had a Rule 11 obligation to satisfy, and it was entirely reasonable that he devote a total of five hours to the subject of healthcare at the Dallas County Jail in general and Plaintiff's healthcare records in particular. The entry is reasonable and compensable.

Defendant objects to the entry dated January 12, 2006 of 4.5 hours to: "Review Shepherd Jail and medical records and other documents from County." This review took place ten months after Mr. Tittle's initial review. Given the time frame, the Court finds it to be neither unreasonable, duplicative, nor redundant. Defendant's objection should be overruled.

Defendant next objects to an entry of February 7, 2006 of 3.5 hours for: "OC w/co-counsel re: status of case and strategy; TC w/Greg Gober re: meeting w/Dolena Westergard." Without more guidance as to Defendant's objection to the February 7, 2006 entry, the Court finds that a lengthy office conference with co-counsel regarding the status of the case and trial strategy and a telephone conference with Mr. Gober regarding his meeting with defense counsel are not unreasonable, particularly in light of the fact that co-counsel, in the exercise of billing judgment, did not bill for either the office conference or the telephone conference. The Court finds this entry to be reasonable and compensable.

The next group of objections deals with Mr. Tittle's billing of the time he spent with respect to the initial designation of expert witnesses. Specifically, Defendant raises its general objections to the following entries:

| | |
|---|---|
| Oct. 2, 2006: TC w/experts (Howard and King); work with experts re: reports | 6.0 |
| Oct. 4, 2006: Rev. Sharon Howard expert report and charts; TC with experts | 5.75 |
| Oct. 5, 2006: Work on Pl's design of experts; e-mail to expert; rev. King report, experts' CV; identify non-retained experts | 9.0 |
| October 6, 2006: Finalized Pl's Desig. of Experts; TC w/Greg Gober re: expert reports | 7.0 |

The entries of October 2-6, 2006 are specific enough to permit the Court to determine that Mr. Tittle conferred with experts Howard and King, obtained reports and charts from them, prepared his

designation of them as expert witnesses, reviewed their qualifications,  and identified his non-retained experts.  The 27.75 hours that Mr. Tittle spent on those dates does not appear to be duplicative.  The entries are reasonable and  necessary as part of counsel's pretrial obligations and to comply with the federal and local rules.  The October 2006 time is compensable.

Defendant objects generally to Mr. Tittle's entries for January 4, 9, and 16, 2007 as not actually necessary, not reasonable, and redundant.  (Def.'s Resp. at 4.)  Defendant makes the same general objections to the time billed by Mr. Chaiken on December 28, 2006 and January 4 and 15, 2007.[7]  (*Id*.)  These entries refer in part to the time Mr. Tittle, Mr. Chaiken, and Mr. Gober spent reviewing Defendant's summary judgment motion, filed December 28, 2006, and performing legal research on a response (not filed until 8 months later) and in part to a conference Mr. Chaiken and Mr. Tittle had in Fort Worth with counsel for Mr. Mims  in the case of *Mims, et al, v. Dallas County, et al.*, No. 3:04-CV-2754-M (N.D. Tex. July 11, 2007).  Defendant also objects more specifically to these same entries for "reviewing and discussing the *Mims* file" and part of Mr. Tittle's entry for January 21, 2007 as "unnecessary work."

The Court reserves until later in these findings Defendant's objections to the time billed in these entries regarding Defendant's Motion for Summary Judgment and turns first to all of Defendant's objections to the time counsel spent reviewing and discussing the *Mims* file:


Mr. Tittle-1/4/07- mtg. in Fort Worth with          Mr. Chaiken-1/4/07 travel to Fort Worth
Mark Haney re: assoc. case (*Mims*) - 4 hours       to rev. mat. from *Mims* - part of 5.50

---

[7]  The entry for January 15, 2007 is actually Mr. Gober's time.  Mr. Gober claims that he spent 7.5 hours on "[r]esearch for response to Motion for Summary Judgment; exchange emails with D. Tittle and R. Chaiken."

In addition to the initial meeting with Mims counsel, Mr. Tittle spent the following time:

| | |
|---|---|
| 1/9/07: rev. of *Mims* summary judg. resp. | part of 3.9 hours |
| 1/16/07: rev. *Mims* summary judg. materials | part of 5 hours |
| 1/21/07: read Puisis depo in *Mims* case | part of 6 hours |

Despite Defendant's objections, it has implicitly admitted that the *Mims* case was an important reference for counsel in this case. (Pl.'s Reply App. at 001-002.) Defendant entered into an agreement regarding the depositions taken in the *Mims* case relative to their use in this case to save the time and expense involved in taking new depositions of certain witnesses.[8] (*Id.*) The Court finds that the objections to Mr. Tittle's time should be overruled. The agreement not to take new depositions undoubtedly saved Dallas County not only many hours of its own counsels' time but also many hours of Plaintiff's counsels' time as compared to the objected-to time counsel spent reviewing the *Mims* case. Nevertheless, Plaintiff's counsel has not explained why it was necessary on January 4, 2007, for both Mr. Tittle and Mr Chaiken to travel to Fort Worth to meet with Mims' counsel and to review the *Mims* materials. Mr. Tittle billed 4 hours and Mr. Chaiken group billed for the meeting and time for reviewing Defendant's motion for summary judgment (filed on December 28, 2006) for a total of 5.5 hours. The Court finds that the District Court should disallow 4 hours of Mr. Chaiken's January 4, 2007 entry as duplicative and redundant.

---

[8] According to Defendant, the *Mims* case settled more than a year before the trial of this case for in excess of $900,000. (Def.'s Resp. at 11-12.)

In sum, Defendant's objections to counsel's time spent reviewing and discussing the *Mims* materials are denied in part and sustained in part to the extent that 4 hours should be deducted from Mr. Chaiken's bill. The remainder of Defendant's objections regarding counsels' time reviewing *Mims* materials should be overruled.[9]

With respect to the time spent on the response to Defendant's motion for summary judgment, the billing records indicate that it was primarily Mr. Tittle who worked with Ms. Branscum on the response to Defendant's summary judgment motion. Plaintiff has not shown that the time billed by Mr. Chaiken and Mr. Gober in connection with Defendant's motion for summary judgment was reasonable, necessary, and not duplicative of Mr. Tittle's and Ms. Branscum's work in this regard. Defendant's objections to the time spent on the response to the motion for summary judgment should be sustained in part and denied in part. The District Court should exclude 3.30 of Mr. Chaiken's time for the entry of December 28, 2006 and 1.5 hours[10] on January 4, 2007, deducting a total 4.8 of Mr. Chaiken's hours as redundant. Additionally, the District Court should exclude Mr. Gober's entry of 7.5 hours on January 15, 2007, as redundant.

Defendant objects to Mr. Tittle's entry of 4 hours on July 18, 2007 for a conference with Debbie Branscum, continued review of documents, DOJ report, and other evidence for Plaintiff's summary judgment response. Defendant also objects to Mr. Tittle's entries from August 6, 2007

---

[9] The billing does not indicate whether Mr. Tittle spent the entire 4 hours on the meeting with Mims' counsel or whether it included travel time to Fort Worth. In the absence of an objection from Defendant that this entry included travel time, the Court assumes the entire 4 hours was for the meeting.

[10] Mr. Chaiken group billed his work on the summary judgment motion and his meeting with counsel for Mims for a total of 5.50 hours on January 4, 2007. The Court has previously recommended deducting 4.0 hours for the meeting as duplicative, leaving 1.5 hours that Mr. Chaiken spent on the summary judgment motion.

through August 27, 2007, which bill for various tasks associated with preparation of a response to Defendant's motion for summary judgment. Additionally, Defendant objects to Ms. Branscum's billing in connection with preparation of the response to Defendant's motion for summary judgment, including her billing entries from July 14, 2007 through August 27, 2007. Defendant's objections to these entries under the "block-billing" section of its response are general and conclusory. However, Defendant extensively details its objections to the time spent in connection with the preparation of the response to Defendant's motion for summary judgment under the heading of "Excessive Hours Spent." Accordingly, the Court reserves its discussion of these objections until the Court addresses Defendant's excessiveness argument.

Defendant generally objects to Mr. Tittle's entries of May 2-5, 2008 which are his billing entries for his work on expert witness designations, reviewing a life care plan, meeting with the economist, and preparing the supplemental designation of expert witnesses, meeting again with the economist regarding the present value of the life care plan, legal research regarding the admissibility of the offset method, work on a spreadsheet with the expert economist using the life care numbers, work on Curriculum Vitae ("CV") and finalization of the supplemental designation of expert witnesses. Plaintiff seeks a total of 32.5 hours for this pretrial preparation. The work represented by these entries is not duplicated by the billing of co-counsel, and the Court has no reason to find that the work was not performed in accordance with the hours indicated. In sum, absent a more specific objection from Defendant, the Court finds that this work was reasonable, necessary, and compensable. The same is true for Defendant's general objections to Mr. Tittle's entries for May 28-June 2, 2008 regarding his work on 26(a)(3) disclosures, and reviewing potential exhibits and depositions. Defendant's objections should be overruled.

Defendant objects to Mr. Tittle's entries from August 7-17, 2008 which include a number of entries labeled trial preparation; a conference with co-counsel regarding trial exhibits, deposition excerpts, and other pretrial matters; working on exhibits, the joint pretrial order, and the jury charge; reviewing the Oliver and Hurt depositions; working on the Motion in Limine, jury questionnaires, and 14-day material; a telephone conference with expert witness Lambert King; finalizing the 14-day materials and filing them with the court; reviewing all depositions, working on deposition excerpts, highlighting the Department of Justice ("DOJ") report, conferring with the client re: a settlement offer, highlighting the Health Management Associates ("HMA") report; attending the pretrial conference, working on exhibits, meeting with expert witness L. Moody; reviewing and finalizing all exhibits; hand delivering the exhibits to Defendant, another meeting with the expert; working on the trial notebooks; working on the opening statement, direct examinations, meeting with Michael Cheney regarding the exhibits, phone conversation with Paul Roach; and further work on the trial notebook. The time indicated ranges from 4 to 12 billable hours per day for a period of 11 days. The number of entries, which range from two to six per day, are vague, for example: "trial preparation" and "continue trial preparation." Both the blocks of time and the number of entries per block are larger than was true for the objections this Court previously recommended overruling with respect to Defendant's claims of block billing. Although all of the entries represent reasonable and necessary tasks for counsel to perform as the time for trial approaches, the Court is unable to discern whether the time spent on each task is reasonable. Accordingly, the District Court should grant a 10% reduction of the time requested by Mr. Tittle for the entries from August 7-17, 2008. Defendant's objection should be denied in part and sustained in part to the extent that the total of 97.1 hours

-14-

for this time period should be reduced by 9.7 hours to 87.4 hours. Accordingly, 9.7 hours should be deducted from Mr. Tittle's total hours of 504.15.

Defendant objects to various other entries as being unnecessary, unreasonable, and redundant. The court recognizes that it is possible that Mr. Tittle's fee application seeks compensation for unreasonably expended time. Defendant has failed in its objections, however, to demonstrate why the other entries to which it objects are unreasonable. Accordingly, any objections which the Court has not specifically discussed should be overruled.

Defendant makes the same general and conclusory "block billing" objection to the entries of Ms. Branscum which the Court has abbreviated and set out in "Exhibit B" hereto.[11] Defendant claims that the Court cannot ascertain what work performed was actually necessary, reasonable, and not redundant, but, as with its other "block billing" objections, provides the Court with no guidance with respect to which tasks should be eliminated or reduced by what amount and for which of the three reasons noted. Most of Ms. Branscum's time entries to which Defendant objects as "block billing" concern the preparation of Plaintiff's response to Defendant's motion for summary judgment. First, the Court notes that although Ms. Branscum grouped some of the tasks in her bill, she spent the majority of her time preparing the response to the summary judgment motion. After reviewing in detail the objected-to time, the Court notes that on July 18, 2007, both Mr. Tittle and Ms. Branscum billed for conferring with each other. The same is true for Mr. Tittle's and Ms. Branscum's entries of August 24 and 27, 2008. Ms. Branscum's time

---

[11]  The Court notes that Defendant objects to Ms. Branscum's entries for August 10, 13, 14, 15, 16, 17, 18, 22, 23, 24, 25, 26, 27, 2008, but presumably meant to object to these dates for August 2007 because Plaintiff's Response to Defendant's Motion for Summary Judgment was filed September 5, 2007. Ms. Branscum has no entries for August 10, 14, 15, 16, 23, 24, 25, and 27, 2008.

billed for those days totals 33.7 hours. Because the billing does not enable the Court to determine how long the conferences lasted, the Court finds that a deduction of 10% from Ms. Branscum's entries on those dates would be an appropriate reduction. Accordingly, Defendant's objections should be denied in part and sustained to the extent that the District Court should reduce Ms. Brancum's hours for 3.37 hours already billed by Mr Tittle for the same conferences.

**C.      Whether the District Court Should Reduce Plaintiff's Attorney Fees for Unnecessary Work**

**1.      Preparation of Sur-Reply to Defendant's Summary Judgment Reply**

Plaintiff prepared and sought leave to file a sur-reply correcting alleged misstatements in Defendant's reply and asking the Court to consider additional evidence of a case brought by the Department of Justice against Dallas County regarding the constitutionally-inadequate medical care at the Dallas County Jail. A consent decree was entered in that case on November 6, 2007. *United States of America v. Dallas County, et al*, No. 3:07-CV-1559-N (N.D. Tex. Nov. 6, 2007). The District Court denied Plaintiff leave to file a Sur-Reply. Defendant contends the preparation of the Sur-Reply and motion for leave to file it were unnecessary. Plaintiff's counsel attached a copy of the proposed Sur-Reply to the motion requesting leave to file it. The Court has reviewed the motion for leave and the proposed Sur-Reply. The Court finds that Plaintiff brought the motion for leave to file Sur-Reply and the proposed Sur-Reply in good faith and that the time spent on each was reasonable and necessary to achieve the good quality of the pleadings. The District Court should not deny time spent on these pleadings solely on the basis that Plaintiff did not prevail on them. *See Hensley,* 461 U.S. at 434-35 (holding that work performed on distinctly different, unsuccessful *claims* is not compensable); *Von Clark v. Butler,* 916 F.2d 255, 259 (5th Cir. 1990) (affirming reduction in hours based on district court's inability to distinguish

between hours spent on successful claim and unsuccessful claim). As the Court has previously noted, Plaintiff did not bring any unsuccessful claims. Accordingly, Defendant's objection to the number of compensable hours for the time Debbie Branscum spent on November 30, 2007, December 3, 2007, and December 4, 2007 (16.4 hours) should be overruled.

### 2. "Reading the Newspaper"

Defendant requests that the Court disallow time counsel spent "reading the newspapers." Plaintiff points out that Defendant mistakenly identifies the attorney task that was performed. Plaintiff asserts that counsel reviewed numerous articles investigating the inadequate medical conditions in the Dallas County Jail, which included statements by the same public officials involved in this case, about the same issues presented in this case. Defendant listed a number of the newspaper articles as Exhibits. The Court has reviewed Plaintiff's response to Defendant's motion for summary judgment. The Court finds that discovery conducted through investigative reporting may have contributed to Plaintiff's survival of summary judgment. The newspaper articles are relevant to the Dallas County Commissioners' knowledge of the medical conditions at the Dallas County Jail. The Court should overrule Defendant's objection.

**D.** **Whether Plaintiff's Attorney Fees Should Be Reduced for "Excessive" Hours**

**1.** **Review of the DOJ and HMA reports**

Defendant objects to the 9.5 hours[12] that Mr. Tittle billed for reviewing the DOJ and HMA reports as excessive in the context of the case at the time of review, i.e., substantially before the trial of this action and separate and apart from the preparation of the response to the summary judgment motion. (Def.'s Resp at 7.) Plaintiff responds that the DOJ report was 47 single-spaced pages, and the HMA report was 52 single-spaced pages. Plaintiff contends the reports were filled with "analysis, factual statements, case histories, and other information on the core issues presented in this case, and the time spent reviewing them was reasonable and necessary." (Pl.'s Reply at 6.) This Court is familiar with the DOJ and HMA reports and the time it would take to review them. The Court finds that the time billed is reasonable, is not excessive, and should be compensable. Moreover, the Court does not find the timing of the review to be unreasonable. The reports were relevant to all of the trial preparations, not simply the response to the summary judgment motion. Defendant admits in its response that the reports were used at trial. Defendant's objection should be overruled.

**2.** **Preparation of the response to Defendant's summary judgment motion**

Defendant contends the amount of time Plaintiff's counsel spent on the response to its summary judgment motion is unwarranted, unjustified, and excessive. Defendant first reiterates

---

[12] In addition to 3 hours on December 12, 2006, Defendant objects to part of 6 hours on January 21, 2007, part of 6 hours on July 13, 2007, part of 4 hours on July 18, 2007, and part of 5.5 hours on August 8, 2007. Considering the other tasks included in these billings, the Court finds that counsel reasonably spent 3 hours on January 21, 2007, 1 hour on July 13, 2007, 2 hours on July 18, 2007, and .5 hours on August 8, 2007 reviewing the DOJ and HMA reports for a total of 9.5 billable hours.

the argument that this Court has previously rejected that an unspecified number of hours are attributable to a claim on which Plaintiff did not prevail. The Court has addressed this contention and recommended that it be denied. The Court need not revisit the reasons that this contention is without merit.

Defendant also objects on the basis that the time spent was unnecessary because counsel "needed to do little more than echo the District Court's decision in *Palo v. Dallas County, et al.*, Civil Action No. 3:05-CV-527-D (Doc. 75, filed July 26, 2007) (a decision rendered more than a month before Plaintiff's response was due)." This argument is specious, at best. "The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 581 (1986) (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.D.C. 1980) (en banc)).

The Court has considered the response which was primarily prepared by Mr. Tittle and Ms. Branscum, both of whom contributed their special expertise to its preparation. The Court is familiar with the work of both counsel, their reputations, and their quality representation of clients. Mr. Tittle is an experienced civil rights attorney and Ms. Branscum specializes in legal research and writing. Considering the novelty and complexities of the issues, counsel would have been remiss to assume that they could simply rely on *Palo*. The response reflects thorough legal research, an excellent presentation of the issues, and extremely-skilled and persuasive writing. The response obtained the results that were sought, a jury trial.

Courts should scrutinize the possibility of duplication of effort, along with the proper utilization of time, if more than one attorney is involved. *Johnson*, 488 F.2d at 717. They may discount the time of two or three lawyers in a courtroom or conference when one could

accomplish the task. *Id.* The Court has thoroughly vetted the objected-to hours. Previously, this Court recommended that the District Court sustain Defendant's objection to the time Mr. Chaiken and Mr. Gober spent in connection with the summary judgment motion on December 28, 2006, January 4, 2007, and January 15, 2007 as redundant because Mr. Tittle and Ms. Branscum performed the same tasks. Defendant also seeks to exclude .5 hours Mr. Chaiken billed on June 28, 2007 for a telephone conference with Mr. Tittle regarding the motion for summary judgment. Inasmuch as Mr. Tittle billed for this work, the Court finds that the objection should be sustained. Finally, with respect to Mr. Chaiken's work on the summary judgment response, Defendant asserts that 8.4 hours that Mr. Chaiken billed on July 18, 2007, should be excluded. Debbie Branscum billed 8.4 hours for essentially the same work on July 18, 2007, and Mr. Tittle billed 4.0 hours for the same. In light of Ms. Branscum's 8.4 hours on July 18, 2007, Mr. Chaiken's 8.4 hours and Mr. Tittle's 4.0 hours on the same date appear excessive. In sum, the Court recommends that the Court overrule Defendant's objections in part and sustain Defendant's objections to the extent of eliminating 8.4 hours that Mr. Chaiken billed and 4.0 hours that Mr. Tittle billed, for failing to exercise billing judgment and for excessiveness.

The Court now turns to the objection that the remaining hours spent by Mr. Tittle (46.4) and by Ms. Branscum (167.7) in connection with preparation of the response to the summary judgment motion are excessive. In her Declaration, Ms. Branscum notes the extreme difficulty of the task because of the dearth of cases in which a plaintiff has successfully challenged as unconstitutional the medical care in a county jail. (Pl.'s App. at 35.) She also avers that she used billing judgment by not billing for all of the time she devoted to the case. (*Id.* at 37.) Additionally, Ms. Branscum states that the chart she prepared of Defendant's arguments and

Plaintiff's responses was used not only in connection with the summary judgment response but was also utilized in trial preparation, preparation of opening arguments, and in preparing for the direct and cross-examination of witnesses.  (*Id*. at 35.)

The Court finds that based upon the complexity of the issues, the special skill and expertise of counsel, the quality of the response, and the results obtained, the District Court should find these hours reasonable and compensable.  Defendant's objections to these hours as excessive should be overruled.

In sum, Defendant's objection to the billing for the summary judgment motion as excessive should be sustained to the extent of 8.4 hours for Mr. Chaiken and 4.0 hours for Mr. Tittle.  The objection should be denied in all other respects.

### 3.  **Legal Research**

In connection with the time counsel billed for legal research, Defendant makes the same excessiveness objections that it made regarding the summary judgment motion for essentially the same reasons.  (Def.'s Resp. at 8-9.)  The Court has reviewed the objected-to entries for Mr. Tittle and Ms. Branscum.  For the same reasons the Court has discussed in connection with the summary judgment response, Defendant's objections should be overruled, and the District Court should find the hours spent on legal research reasonable and compensable.

### 4.  **Summary**

After proper review, the court finds the remaining hours which Plaintiff submitted are sufficiently specific, adequately supported by contemporaneous time records, reasonable, and compensable.  The Court  knows of  no additional reasons for adjusting Plaintiff's submitted hours and so, in accordance with the above modification, Plaintiff is entitled to fees for the

following hours billed.:

Mr. Chaiken's reasonable and compensable hours total 68.7;

Mr. Gober's reasonable and compensable hours total 63.3;

Mr. Tittle's reasonable and compensable hours total 490.45; and

Ms. Branscum's reasonable and compensable hours total 234.6.

**IV.     The Reasonable Hourly Rate**

The Court now turns to a determination of the reasonable hourly rates for the attorneys. Plaintiff seeks $350 per hour for Mr. Chaiken and Mr. Tittle, $300 per hour for Ms. Branscum, and $200 per hour for the associate, Mr. Gober. (Pl.'s App. at 0008.) Defendant challenges the hourly rate on the grounds that the Plaintiff has submitted insufficient evidence to establish the reasonableness of the rates requested. (Def.'s Resp. at 11-12.) The Court disagrees. Plaintiff submits the Declaration of Mr. Tittle, in which he details his own legal experience and states that the rate he is requesting is reasonable in the Dallas legal community for similar services by attorneys of reasonably-comparable skill, experience and reputation. Mr. Tittle has practiced law for fifteen years and, for the last ten years, has devoted a substantial portion of his practice to representing plaintiffs in civil rights actions pursuant to 42 U.S.C. § 1983. This Court is familiar with Mr. Tittle's representation of nineteen plaintiffs in litigation against the City of Dallas in the "fake drug" civil rights case.

Plaintiff submits the Declaration of Mr. Chaiken, who has practiced law for more than fifteen years and was the lead attorney who associated for this case with Mr. Tittle for his civil rights experience and with Ms. Branscum for her legal research and writing expertise. Mr. Chaiken states that he is familiar with hourly rates charged in the North Texas region for complex

federal court trial litigation by large-to-medium-sized firms and that the rates charged range from $250-$600 per hour. The Declaration of Ms. Branscum states that she has practiced law for seventeen years, serving as a law clerk to United States District Judge Joe Kendall for seven years and practicing law at two law firms before becoming a sole practitioner. Her primary area of practice is writing motions and briefs to federal and state district courts. She states that the hourly rate she seeks is reasonable in the Dallas legal community for similar services by attorneys of reasonably-comparable skill, experience, and reputation.

Defendant objects that Plaintiff has not established that the hourly rates requested are customary hourly rates which any one of them have actually charged and been paid. (Def.'s Resp. at 10.) In *Barrow*, the Defendant contended the rates requested for two of the attorneys were unreasonable because the attorneys had never received the rates they claimed. *Barrow*, 2005 U.S. Dist. LEXIS 34557, at *53-54. The District Court agreed and determined that it would not consider that factor in determining the reasonable hourly rates. *Id.* Instead, the District Court determined the hourly rates to be used in the lodestar calculation based upon "the prevailing market rates in the relevant community." *Id.* at *57 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The District Court noted that "as the fee applicant, Barrow bears the burden of demonstrating 'that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* (quoting *Blum*, 465 U.S. at 895 n. 11.)

Plaintiff submits the Declaration of Mark Haney ("Mr. Haney"), in which Mr. Haney details his own legal experience and states that he is aware of the qualifications and background of Plaintiff's attorneys. Mr. Haney states that he is familiar with the customary hourly rates

generally prevailing in the Dallas legal community for similar legal services by attorneys of reasonably comparable skill experience and reputation as those of Plaintiff's counsel. Mr. Haney states that the hourly rates requested by the attorneys in this case are comparable to the hourly rates customarily charged in the Dallas legal community for complex litigation such as this case.

Defendant objects to Mr. Haney's affidavit, claiming that Mr. Haney's lack of experience in advocating federal civil rights cases under § 1983 disqualifies him from testifying to the hourly rates customarily charged in the Dallas legal community for cases like this one. Mr. Haney is an officer of the Court who has practiced in this legal community and is qualified to give sworn testimony on this subject. Additionally, in 2005, the District Court approved hourly rates or $250 and $300 for attorneys with similar skill, experience, and reputation to Plaintiff's attorneys in complex federal litigation. *Barrow*, 2005 U.S. Dist. LEXIS 34557, at *57.

This case spanned a three-year period, but most of the time billed in this case was for 2007 and 2008. The Court has considered the entire record in this case, including the response to Defendant's motion for summary judgment, the attorney fee submissions, the skill, experience, and reputation of each of the attorneys, Mr. Haney's sworn declaration, and the fees that the District Court awarded in *Barrow* in 2005. *See id.*, 2005 U.S. Dist. LEXIS 34557, at *57. The Court recommends that the reasonable hourly rate for the services of Mr. Chaiken and Mr. Tittle be set at $350. Based on the same considerations, the Court recommends that Ms. Branscum's hourly rate be set at $300 and Mr. Gober's hourly rate be set at $200.

Based on the recommended hourly rates and reasonable and compensable hours, the District Court should find that the lodestar amount in this case is $278,751.50.

## V.    <u>Adjustment of the Lodestar</u>

Plaintiff seeks "a modest multiplier of the lodestar based on the *Johnson* factors." (Pl.'s Br. at 11.) Defendant takes the position that an upward adjustment of the lodestar under the *Johnson* factors is not justified. (Def.'s Resp. at 13.) Defendant unfairly disparages counsels' performance, professing that the verdict in this case was in no way attributable to Plaintiff's counsel. (Def.'s Resp. at 14.) The District Court commended all counsel in this case on their professionalism. Defendant's asserts that counsel "merely relied on what this Court had already decided in *Palo* and then just spent the vast majority of the time before the jury reading and rereading from the HMA report and the DOJ report." (*Id.*) Defendant's baseless assertion fails to demonstrate the same professionalism. The Court gives it no consideration.

The Court must consider the twelve factors set forth in *Johnson* in determining whether to adjust the "lodestar" fee amount. *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997). As previously stated, those twelve factors are:

> (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was "undesirable"; (11) the type of attorney-client relationship and whether that relationship was long-standing; and (12) awards made in similar cases."

*Id.* at 822 n.17. Plaintiff does not seek enhancement based on the fourth, seventh, or eleventh factors. The first factor already is included in the lodestar, and "the district court must be careful . . . not to double count a *Johnson* factor already considered in calculating the lodestar. . . ." *Shipes II*, 987 F.2d at 320. The United States Supreme Court has limited greatly the use of the

second, third, eighth, and ninth factors. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) ( "'[N]ovelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award.") (quoting *Blum*, 465 U.S. at 898-900);[13] *Shipes II*, 987 F.2d at 320. In this case, enhancement is not warranted by the second, third, or ninth factors because they are properly subsumed in the lodestar amount.

Plaintiff contends the eighth factor, the amount involved and the results obtained, weighs in favor of enhancement. From a non-monetary standpoint, Plaintiff clearly obtained excellent results. He established by his lawsuit that his conditions of confinement as a pretrial detainee in the Dallas County Jail were unconstitutional and that he had sustained actual damages as a result. For a pretrial detainee's civil rights case against a government entity in Dallas County, Texas, a verdict in excess of $900,000 is uncommon.[14] Nevertheless, in considering the results obtained, both the United States Supreme Court and the Fifth Circuit Court of Appeals require the Court to consider "the amount of damages awarded as compared to the amount sought." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998) (addressing Title VII claim) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Although the verdict was much greater than Defendant's

---

[13] Although the attorney fee application in *Delaware Valley* was brought under § 304(d) of the Clean Air Act, the Supreme Court noted that "the purposes behind both § 304(d) and [42 U.S.C.] § 1988 are nearly identical, which lends credence to the idea that they should be interpreted in a similar manner." *Delaware Valley*, 478 U.S. at 559.

[14] Defendant claims an upward adjustment is not required because the *Mims* case settled for in excess of $900,000. However, Defendant never offered to settle this case for anywhere close to that amount.

settlement offer on the eve of trial, after most of the attorney fees had been incurred, the jury's verdict was much less than the damages that Plaintiff requested.[15] Plaintiff fails to provide specific evidence from the record to show why this case should be considered "rare" in the sense required by the Supreme Court and the Fifth Circuit Court of Appeals. Further, an enhancement based on the results obtained is appropriate only when the fee applicant can demonstrate that "it is customary in the area for attorneys to charge an additional fee above their hourly rates for an exceptional result . . . ." *Shipes II*, 987 F.2d at 322. Plaintiff has made no such showing. Enhancement based on the eighth factor is not warranted.

The sixth *Johnson* factor is whether the fee is fixed or contingent. Although in his pleadings, Plaintiff sought only a "modest enhancement" of the lodestar, Plaintiff's counsel argued at the hearing on his motion that Plaintiff would not be made whole unless the lodestar was increased to fully cover the 40% contingent fee agreement between Plaintiff and counsel. The Supreme Court has barred any use of the contingent nature of the case factor to increase the lodestar amount. *See City of Burlington v. Dague*, 505 U.S. 557, 567 (1992). The Fifth Circuit Court of Appeals has followed suit. *See Shipes II*, 987 F.2d at 323 (stating that "following the

_____

[15] A downward adjustment in the lodestar can be made where the *ad damnum* is much greater than the damages awarded; however, absent other *Johnson* factors justifying a reduction in a fee award, a district court should not reduce the fee award solely because of low damages compared to the amount sought. The Fifth Circuit Court of Appeals has cautioned that:

> Such an approach would lead to a proportionality requirement between the amount of attorney's fees and the amount of damages and was explicitly rejected by the Court in [*City of Riverside*, 477 U.S. at 576].

*Cobb v. Miller*, 818 F.2d 1227, 1235 (5th Cir. 1987); *accord Hollowell*, 217 F.3d at 392. A downward adjustment would be particularly inappropriate in this case, not only because none of the *Johnson* factors warrants a downward adjustment, but also because Defendant has not even requested a downward adjustment.

clearly lighted path of *Burlington*, we now hold that the contingent nature of the case cannot serve as a basis for enhancement of attorneys' fees"). The fact that counsel took this case on a contingent fee cannot be used to enhance the attorney fee award.

The lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney fee, and courts need not enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance. *Delaware Valley*, 478 U.S. at 565-66. The Court finds that Plaintiff has failed to show that either the undesirability of the case or awards in similar cases warrants an enhancement, particularly in the absence of Fifth Circuit precedent. After considering the relevant *Johnson* factors, the Court finds that Plaintiff has not overcome the strong presumption that the lodestar fee is reasonable. The Court recommends no adjustment to the lodestar fee amount.

## VI.    <u>Litigation Expenses</u>

Plaintiff seeks $49,798.11[16] in litigation expenses which were incurred during the course of the litigation by Plaintiff's counsel (Pl.'s App. at 0046.) Defendant challenges the request for litigation expenses on several grounds.

First, Defendant contended that Plaintiff had not properly documented his request for litigation expenses. Plaintiff bears the burden of supporting his request for litigation expenses with evidence documenting the costs incurred. *Barrow*, 2005 U.S. Dist. LEXIS 34557, at *70, citing *Wright v. Blyth-Nelson*, No. Civ. A. 3:99-CV-2522-D, 2004 WL 2870082, at *9 (N.D. Tex. Dec. 14, 2004). *Wright v. Blythe-Nelson,* 2004 U.S. Dist. LEXIS 25181, 2004 WL 2870082, at

---

[16] Plaintiff initially sought $57,052.07 in litigation expenses. However, this amount included the $6,253.96 taxed by the Clerk of Court. In a Supplemental Declaration, filed December 12, 2008, Mr. Chaiken has corrected this mistake.

*9 (N.D. Tex. Dec. 13, 2004) (Fitzwater, J.) (citing *Waggoner v. Trans Union, LLC,* 2003 U.S. Dist. LEXIS 21491, 2003 WL 22838718, at *2 (N.D. Tex. Nov. 24, 2003) (Fish, C.J.)). Plaintiff's original submission was not properly documented. However, the Court ordered Defendants to supplement the request for litigation expenses with underlying documents, and they have complied. Defendant did not object to the supplemental appendix. The Court finds that Plaintiff has met his burden to support his request. Accordingly, Defendant's objection that the fees are not supported by evidence of the expenditures should be overruled.

Next, Plaintiff claims the litigation expenses are not related to the successful claim. The Court need not address this objection because the Court has previously determined that Plaintiff brought and prevailed upon a single civil rights claim.

The Court now turns to Defendant's claim that the request for the remaining litigation expenses are unreasonable. Plaintiff seeks expert and consulting fees of $42,479.99; a mediation fee of $400; postage of $90.07; Federal Express and courier charges of $243.59; charges of $500.68 for obtaining medical records; $45.31 for Westlaw research; $235.26 for trial exhibit notebooks and supplies; $1,248.93 for a "Day in the Life" video production; and $5,240.88 for trial support and equipment. (Pl.'s App. 0030-31.) Plaintiff's motion is supported by the supplemental declaration of Mr. Chaiken who avers that he is familiar with the costs submitted in the Supplemental Appendix. (Pl.'s App. 0047.) He states that these costs were incurred and were both reasonable and necessary for the prosecution of this case. (*Id.*)

A.    **Expert and Consulting Fees**

First, the Court notes that the Clerk taxed witness and mileage fees for six witnesses, but Plaintiff did not include the expert witness fees and mileage in its requests to the Clerk for costs.

Defendant objects to Plaintiff's request for $41,479.29 for expert and consulting fees as litigation expenses, in particular, the fee paid to Dr. Lambert King in the amount of $12,500. Lambert King testified by affidavit and at the trial.

In *West Virginia Univ. Hosp. Inc. v. Casey*, 499 U.S. 83, 102 (1991), the United States Supreme Court concluded that the terms of 42 U.S.C. § 1988 convey no authority to shift expert fees in civil rights cases to the losing party. Prevailing parties therefore cannot recover more than the witness fee provided in 28 U.S.C. §§ 1920 and 1821 for testifying experts and can recover nothing for services rendered by experts in a non-testimonial capacity. *Gates v. Deukmejian*, 987 F.2d 1392, 1407 (9th Cir. 1992). After *Casey*, Congress amended §1988 to specifically provide for the recovery of expert fees in cases brought to enforce a provision of 42 U.S.C. § 1981 or 1981a. *See* 42 U.S.C. § 1988(c); *Padro v. Commonwealth of Puerto Rico*, 100 F. Supp. 2d 99, 109 (D. Puerto Rico 2000). Congress could have amended § 1988 to allow for expert fees in all cases covered by § 1988(b), but did not do so. The *Casey* decision therefore controls with respect to § 1983 cases. *See Barrow*, 2005 U.S. Dist. LEXIS 34557, at **90-91. Plaintiff pursued a

§ 1983 claim, therefore, he cannot shift the burden of his experts' fees to Defendant. Plaintiff is entitled only to the statutory per diem witness fee for each testifying expert. These costs should have been submitted to and taxed by the Clerk of Court. The Court is unable to determine from Plaintiff's submission which of the experts testified at trial. Accordingly, Plaintiff has waived the § 1920 attendance fees for the expert witnesses who testified by failing to submit them to the Clerk in his Bill of Costs. Even if the Court could exercise its discretion to award the expert witness and consulting fees other than those taxed as costs, Plaintiff has not proven an exception

which would permit the District Court to do so in this case. Accordingly, Plaintiff's request for expert witness fees other than those taxed by the Clerk should be denied.

### B.     Mediation Fee

Plaintiff requests a mediation fee of $400. A mediator's fees are not covered by § 1920 and, as a result, may not be taxed as costs. *Mota v. Univ. of Texas Houston Health Science*, 261 F.3d 512, 530 (5th Cir. 2001). *See also Brisco-Wade v. Carnahan,* 297 F.3d 781, 782 (8th Cir. 2002) (holding that § 1920 does not authorize taxing mediation fees as costs). Accordingly, Plaintiff's request for a mediation fee of $400 should be denied.

### C.     Federal Express and Courier Charges, Courtroom Equipment and Support Charges, and "Day in the Life" Video Production

Plaintiff seeks Federal Express and courier charges in the amount of $243.59; courtroom equipment and support charges in the amount of $5,240.88; and $1,248.93 for a "Day in the Life" video production. (Pl.'s Supp. App. at 50.) Costs that are specified in § 1920 are taxable. *See* 28 U.S.C. § 1920; *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 439-40 (1987) (holding that costs specified in § 1920 are taxable), *superseded in part by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074. Delivery and courier services fees are not recoverable under § 1920. *Wright v. Blyth-Nelson*, No. Civ. A. 3:99-CV-2522-D, 2004 WL 2870082, at *10 (N.D. Tex. Dec. 14, 2004). Similarly, courtroom equipment costs, which are not enumerated in § 1920, are not recoverable. *See, e.g., Gaddis v. United States*, 381 F.3d 444, 451-52 (5th Cir. 2004) (en banc) (holding that, under *Crawford Fitting*, only expenses listed in § 1920 are recoverable). Plaintiff has not cited any authority that supports recovery of videographer fees for production of a "Day in the Life" video as part of an attorney's fee award under § 1988 or any other fee-shifting statute. The Fifth Circuit Court of Appeals has explicitly held that

videographer fees are not recoverable as costs under § 1920.  *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 396 (5th Cir. 2003) (citing *Mota*, 261 F.3d at 530) (holding that costs of videotaped depositions are not recoverable under § 1920); *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993) (holding that video technician fees incurred for video depositions are not recoverable under § 1920).  Accordingly Plaintiff's request for these costs should be denied.

### D.  Expenses for Postage, Obtaining Copies of Medical Records, Westlaw Research, and Trial Exhibit Notebooks

Plaintiff seeks the following  expenses: postage, $90.07; copies of medical records, $6,770.38; Westlaw research, $45.31; and trial exhibit notebooks and supplies, $235.26.   In *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish School Bd.*, 919 F.2d 374, 380 (5th Cir. 1990), the Fifth Circuit Court of Appeals held that "all reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone, are plainly recoverable in *section 1988* fee awards because they are part of the costs normally charged to a fee-paying client."   *Id*. at 380; *Barrow*, 2005 U.S. Dist. LEXIS 34557, at *89 (citing *Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174, 1185 (5th Cir. 1986)).  Defendant does not specifically contest that expenses for postage, obtaining copies of medical records, Westlaw research, and trial exhibit notebooks which are normally charged to a fee-paying client.  Accordingly, the District Court should  award Plaintiff reimbursement for these claimed expenses under § 1988.

### E.  Summary of Litigation Expenses Which the District Court Should Award

In addition to the costs taxed by the Clerk, the District Court should award Plaintiff the following allowable out-of-pocket expenses under §1988 because they are part of the costs normally charged to a fee-paying client:

> postage expenses, $90.07;
> copies of medical records, $500.68;
> Westlaw research, $45.31; and
> trial exhibit notebooks and supplies, $235.26.

The allowable out-of-pocket expenses total $ 871.32

## VII.   Contingent Attorney Fees for Appeal

Plaintiff seeks $50,000 to $75,000 for attorney fees predicted for Defendant's appeal, an additional $40-50,000 if Defendant files a petition for certiorari, and if granted, an additional $75-100,000 to see the case through to conclusion. (Pl.'s App. at 0006-0007.) Plaintiff asks this Court to award it fees for Defendant's appeal based upon this estimate by Mr. Chaiken or alternatively, to declare its entitlement to attorney fees on appeal and to determine the amount after the appeal. (Pl.'s Mot. at 14.)

"[T]he basic principle that the prevailing party is due only compensation for 'reasonable attorney's fee(s),' 42 U.S.C. § 1988, necessarily implies an evaluation both of the necessity of rendering those services for which a fee is sought and of the reasonableness of the amount requested." *Stone v. City of Wichita Falls*, 668 F.2d 233, 233-34 (5th Cir. 1982). Even where it is clear that attorney fees should be allowed, "the amount of services rendered, the appropriateness of such services, and the fixing of a reasonable amount in compensation for them are matters that cannot usually be resolved on the face of the record but involve the consideration of evidence even as to services rendered on appeal and in connection with a petition for certiorari in the Supreme Court." *Id*. (citing *United States v. Texas Construction Co.*, 237 F.2d 705, 707

(5th Cir. 1955)).  Although fees might be warranted if Defendant's appeal in this case is unsuccessful, the Court finds no authority to award contingent fees based upon an attorney's estimate.  Therefore, Plaintiff's request for attorney fees on appeal should be denied without prejudice.

## VIII.    Recommendation

For the foregoing reasons, the Court **RECOMMENDS** that the motions for attorney fees and costs be **GRANTED in part** and **DENIED in part**.  Specifically, under § 1988, the Court **RECOMMENDS** that Plaintiff recover a total of  $278,751.50 in attorney fees[17] and $871.32 in allowable out-of-pocket litigation expenses, in addition to the $6,253.96 in costs taxed by the Clerk.  The Court also recommends that Plaintiff recover $2,010 in attorney fees for litigation of the attorney fee dispute.

**SO RECOMMENDED**, January 22, 2008.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

---

[17]  The Court recommends a total reduction of Mr. Chaiken's billing of 17.70 hours, a total reduction of Mr. Gober's billing of 7.5 hours, a total reduction of Mr. Tittle's billing of 13.7 hours, and a total reduction of Ms. Branscum's billing of 3.37 hours.

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc*)*.

## Exhibit A

Defendant objects to the following entries for Don Tittle as "block billing:"[18]

| | |
|---|---|
| March 10, 2005:  Review articles relating to jail healthcare; review Shepherd record | 5.0 |
| Jan. 12, 2006: Review Shepherd Jail and medical records and other documents from County | 4.5 |
| Feb. 7, 2006: OC w/co-counsel re: status of case and strategy; TC w/Greg Gober  re: meeting w/Dolena Westergard | 3.5 |
| Oct. 2, 2006: TC w/experts (Howard and King); work with experts re: reports | 6.0 |
| Oct. 4, 2006: Rev. Sharon Howard expert report and charts; TC with experts | 5.75 |
| Oct. 5, 2006: Work on Pl's design of experts; e-mail to expert; rev. King report, experts' CV; identify non-retained experts | 9.0 |
| October 6, 2006: Finalized Pl's Desig. of Experts; TC w/Greg Gober re: expert reports | 7.0 |
| Jan. 4, 2007: Mtg. In Fort Worth w/Mark Haney re: associated case (*Mims*) against Dallas County | 4.0 |
| Jan. 9, 2007: TC w/Rob Chaiken re: MSJ resp; review of *Mims* summary judgment resp. | 3.9 |
| Jan. 16, 2007: TC w/Greg Gober; review *Mims* summary judgment material | 5.0 |
| July 17, 2007: TC w/Dolena Westergard re: deadline to respond to MSJ; prepared agreed stipulation extending deadline to respond to August 24, 2007; conf. w/Debbie Branscum to work on summary judgment response; review of *Mims* deposition testimony and documents | 6.0 |
| July 18, 2007: Conf. W/Debbie Branscum; continue review of docs., DOJ report and other evidence for summary judgment response | 4.0 |
| Aug. 6, 2007: Continue to work on scheduling depositions, locating and serving witnesses | 6.5 |
| Aug. 22, 2007: Work on Dr. King's aff; work on Sharon Howard aff. | 6.0 |
| Aug. 23, 2007: Work on Dr. King's aff; Sharon Howard aff; phone confs.w/ experts | 3.5 |

---

[18]  The Court has abbreviated the entries rather than use direct quotations.

| | |
|---|---|
| Aug. 24, 2007: Continue work on summary judgment resp; numerous confs. w/Debbie Branscum; travel to client's house for meeting re: aff; Verna Shepherd aff. | 8.5 |
| Aug. 25, 2007: Work on summary judgment response; review depositions | 4.0 |
| Aug. 26, 2007: Work on Ross Teter aff; TC w/Teter; work on MSJ resp | 2.0 |
| Aug. 27, 2007: Work on summary judgment resp; conf. w/Debbie Branscum; finalized and filed Pl.'s Resp., Br. and App. in opposition to Def.'s MSJ | 13.0 |
| May 2, 2008: Work on expert witness designation; discussions w/Chaiken | 3.0 |
| May 3, 2008: Review life-care plan; meeting with economist | 10.0 |
| May 4, 2008: Preparation of supplemental designation of expert witnesses; work on CV | 4.0 |
| May 5, 2008: Meet w/economist re: present value of life-care plan. Legal research re: admissibility of offset method; work on spreadsheet w/expert economist using life care numbers; finalize supple. of expert witness designation | 7.5 |
| May 28, 2008: Work on 26(a)(3) disclosures; review exhibits and depositions | 8.0 |
| May 29, 2008: Work on 26(a)(3) disclosures; continue review of all potential exhibits | 8.0 |
| May 30, 2008: Work on 26(a)(3) disclosures; continue review of all potential exhibits | 6.0 |
| June 2, 2008: Work on and finalize 26(a)(3) disclosures | 5.5 |
| Aug. 7, 2008: Trial prep; conf w/Debbie Branscum re: trial exhs., depo excerpts, and other pt matters | 4.0 |
| Aug. 8, 2008: Trial prep; work on exhibits | 7.0 |
| Aug. 9, 2008: Trial prep; work on joint pt order, jury charge; rev. depos. (Oliver, Hurt) | 10.0 |
| Aug. 10, 2008: Trial prep; work on Mot in limine, jury quests.; TC w/Lambert King; work on 14-day material | 10.0 |
| Aug. 11, 2008: Finalize 14-day materials and file w/court; continue trial prep; cont. review all depos. | 10.0 |
| Aug. 12, 2008: Continue trial prep; work on depo. excerpts; highlight DOJ report | 10.0 |

Aug. 13, 2008:  Trial prep; conf w/client re: settlement offer; highlight HMA report     10.0

Aug. 14, 2008:  Pretrial Conf.; trial prep; work on depo. excerpts, exhs.; meet w/ L. Moody     10.0

Aug. 15, 2008: Review and finalize all exhs; hand deliver to County; continue trial prep; meeting with expert; work on trial notebook     12.0

Aug. 16, 2008: Trial prep; meeting with Paul Roach in McKinney; work on direct exams; work on trial notebooks     12.0

Aug. 17, 2008: Trial prep; work on opening statement, direct exams, meeting with Michael Cheney regarding exhibits; phone conversation with Paul Roach; work on trial notebook     12.0

**Exhibit B**

Defendant objects to the following entries for Debbie Branscum as "block billing:"[19]

| | |
|---|---|
| July 14, 2007: Review case file and documents, begin work on chart of arguments and evidence for MSJ response | 7.8 |
| July 15, 2007: Review depositions and documents, work on chart of arguments and evidence for MSJ response | 6.6 |
| July 18, 2007: Confer with Don Tittle, review docs filed in *Mims* case, work on chart of arguments and evidence for MSJ response | 8.4 |
| July 19, 2007: Review depositions and documents, work on chart of arguments and evidence for MSJ response | 6.7 |
| July 22, 2007: Review depositions and documents, work on chart of arguments and evidence for MSJ response | 5.6 |
| August 10, 2007: Work on MSJ response, legal research in 1983 issues | 6.7 |
| August 13, 2007: Work on MSJ response | 7.9 |
| August 14, 2007: Work on MSJ response | 4.6 |
| August 15, 2007: Meet with client, work on MSJ response | 7.0 |
| August 16, 2007: Work on MSJ response, legal research in jail cases | 6.2 |
| August 17, 2007: Work on MSJ response | 5.8 |
| August 18, 2007: Work on MSJ response, legal research in jail cases | 5.3 |
| August 22, 2007: Work on MSJ response, review motions and documents filed in the *Palo v. Dallas County* case | 9.7 |
| August 23, 2007: Work on MSJ response, legal research in jail cases | 14.2 |
| August 24, 2007: Work on MSJ response, confer with Don Tittle | 14.3 |
| August 25, 2007: Work on MSJ response | 11.8 |
| August 26, 2007: Work on MSJ response | 15.7 |
| August 27, 2007: Work on MSJ response, meet with Don Tittle | 11.0 |

---

[19]The Court has abbreviated the entries rather than use direct quotations.

**Exhibit C**

Defendant objects to the following entries for Robert Chaiken as "block billing:"[20]

| | |
|---|---|
| December 28, 2006: Receive and review MSJ from Dallas County and supporting material; prepare memo regarding same | 3.3 |
| January 4, 2007: Research regarding MSJ; travel with D. Tittle to Fort Worth to review material from associated case against Dallas county (*Mims* case) | 5.5 |
| January 15, 2007: Research for response to MSJ; exchange emails with D. Tittle and R. Chaiken (this entry is from Greg Gober) | 7.5 |

---

[20]The Court has abbreviated the entries rather than use direct quotations.